## BOLL v. OSTROOT.

An owner of land on which there is a slough or reservoir of surface water cannot lawfully discharge it through an artificial channel upon the land of another, to his injury.

That a landowner did not institute suit to enjoin the discharge of water upon his premises until the ditch through which it would flow had been practically completed, defendant having been occupied about a month in its construction, was not such laches as would estop him to seek relief, as it was not the construction of the ditch that gave the right of action, but the threat to turn the water upon his premises.

An injunction is an appropriate remedy to protect a landowner from the wrongful discharge of water upon his land, since the act complained of is necessarily a continuing one.

While it is a well-settled rule that, when the sworn answer fully and unequivocally denies all the material allegations of the complaint, a temporary injunction will be dissolved, yet such rule is not without exception, and a court may in the exercise of a sound discretion refuse a dissolution where there is ground for apprehending some irreparable injury if the injunction is dissolved before the hearing on the merits.

Under an answer in an action to restrain the wrongful discharge of water upon plaintiff's premises, admitting the existence of a slough of defendant's land and that to get to a natural water course he was required to dig a drain 12 feet in depth, and alleging that he had dug such drain, and not denying that he was intending to so discharge the waters from the slough that they would spread over plaintiff's premises, the court was justified in granting a temporary injunction, such admissions and allegations failing to rebut the equities alleged in plaintiff's complaint.

(Opinion filed, May 24, 1910.)

Appeal from Circuit Court, Hamlin County. Hon. GEORGE H. MARQUIS, Judge.

Action by William Boll against Gilbert G. Ostroot. From an order granting a temporary injunction, defendant appeals. Affirmed.

*Hall, Roddle & Purdy,* for appellant.

In the clearing, improvment and preparation of land for cultivation, the owner thereof may, in the exercise of good husbandry, drain his soil, although the consequence is that the surface water flows from his land with greater rapidity, and the quantity of water flowing upon the lower land is considerably increased. Hughes v. Anderson, 68 Ala. 280; Hicks v. Silliman, 93 Ill. 255; Peck v. Herrington, 109 Ill 611; Templeton v. Voshloe, 72 Ind. 134; Vannest v. Fleming, 79 Iowa 638; Guesnard v. Bird, 33 La. Ann. 796; Middlesex County v. McCue, 149 Mass. 103; Gregory v. Bush, 64 Mich. 37; Osten v. Jerome, 93 Mich. 196; Peck v. Goodberlett, 109 N. Y. 180; Kauffman v. Griesner, 26 Pa. 411; Rhoads v. Davidheiser, 133 Pa. 226; Meixell v. Morgan, 149 Pa. 415; Pettigrew v. Evansville, 25 Wis. 223. Every owner of land is entitled to the use of a natural outlet for water for all useful purposes, whether it be a current of fresh, or of salt water passing by or through his land, including necessary drainage, and is entitled to an action against one obstructing the flow upon his

own land. Murdock v. Stickney, 8 Cush. 113. The owner of lands on which there is a natural water-course is entitled to the free drainage thereof on his lands unobstructed by a lower owner. Oliver v. New York Bay Cemetery Co., 38 S. J. Eq. 109; Treat v. Bates, 27 Mich. 390; Hastings v. Livermore, 7 Gray 194; Pugh v. Wheeler, 19 N. C. The lower owner cannot obstruct the water-course so that it will not carry off the water which is accustomed to flow in it. Ferris v. Welborn, 64 Miss. 29, 8 So. 165; Avery v. Vermont Electric Co., 59 L. R. A. 817. Where a plaintiff, with knowledge of all the facts, has delayed so long in seeking equitable relief, without sufficient excuse, that the injury to defendant if injunction is granted will be much greater by reason of expenditures, etc., than that suffered by plaintiff, an injunction will be refused. 22 Cyc. 779. A preliminary injunction will be dissolved where all the equities of the complaint are fully and inevasively denied by verified answer and neither side is supported by the evidence outside the pleadings. In the Court of Chancery it was established practice that the defendant might, on the coming in of the answer, move to dissolve the injunction and the answer was a most important paper upon the motion, for, if it denied the whole equity of the bill, it was the general practice to dissolve the injunction. Hazard v. Hudson River Bridge Co., 27 How. Pr. 296; Grant County v. Colonial & U. S. Mfg. Co., 3 S. D. 390.

*W. N. Skinner,* for respondent.

Though a land owner may repel surface water coming from his neighbor's land to his own, when such water is on his land, he may not by artificial means cause it to flow on the land of another in unaccustomed volumes to his injury. Borchsemush v. C., St. P., M. & O. Ry. Co., 71 N. W. 884; Pettigrew v. Evansville, 25 Wis. 223; Gregory v. Bush, 31 N. W. 90. The owner of higher land is liable if in the course of changes on his property, he injuries lower property by turning thereon surface water which would not naturally have flowed there. The owner of higher land may not open or remove natural barriers, and let onto the lower land water which would not otherwise flow in that direction. Farn-

ham on Waters and Water Rights, Vol. III, 2576; Rhoads v. Davidheiser, 133 Pa. 226; Weed v. St. Johnsbury and L. C. R. Co., 64 Vt. 32. To constitute a watercourse, the size of the stream is not material. It must, however, be a stream in fact, as distinguished from mere surface drainage, occasioned by freshets or other extraordinary causes; but the flow of water need not be continuous. Pyle v. Richards, 22 N. W. 370; Shields v. Arndt, 4 N. J. Eq. 234; Gillett v. Johnson, 30 Conn. 180; Bassett v. Mfg. Co., 43 N. H. 569. A dissolution, like the granting of an injunction is largely a matter of judicial discretion which must be determined by the nature of the particular case under consideration. Huron Waterworks Company v. City of Huron, 3 S. D. 610. A dissolution does not necessarily follow, the coming in of the answer denying the material allegations of the bill, upon which the injunction issued, a court may in the exercise of a sound judicial discretion, refuse a dissolution and continue the injunction to the hearing, when the circumstances of the case seem to demand this course. Huron Waterworks Company v. City of Huron, 3 S. D. 610.

CORSON, J. This is an appeal by the defendant from the order granting a temporary injunction. An action was instituted by the plaintiff to enjoin the defendant from constructing a ditch or drain for the purpose of draining the water from a sink bed or slough on the premises of said defendant onto and over the premises of the plaintiff, and from in any manner draining the said sink hole or slough on the premises of the defendant so as to conduct the water therefrom onto and over the premises of the said plaintiff. An order to show cause was issued upon the verified complaint, and on the return day the defendant served upon the said attorney for the plaintiff, and presented to the court, his answer herein, and moved the court to make an order denying the temporary injunction upon the ground that no affidavits had been served with the summons and complaint, and that the order to show cause was based exclusively upon the complaint, the equities of which were fully denied by the answer. This motion was denied by the court, to which ruling the defendant excepted.

Leave was thereupon given by the court to the defendant to file affidavits in resistance of said application of plaintiff without waiving any rights under the foregoing motion on the pleadings. Thereupon affidavits were served and filed by the defendant, and the court permitted the plaintiff to file affidavits in support of his complaint. It is contended by the defendant (1) that it was incumbent upon the plaintiff to establish the existence of some legal right; (2) that the defendant threatened and was about to violate that right; and (3) that he had no plain, speedy, or adequate remedy at law. And he further contends that the plaintiff failed to establish either of these propositions.

It is disclosed by the complaint and affidavits that the plaintiff was the owner of 80 acres of land adjoining the premises of the defendant, and having within its borders a portion of a lake embracing some 250 acres; that the premises of the plaintiff were less elevated than those of the defendant; and that upon the defendant's premises, near the line between the adjoining premises, there was a slough upon the defendant's premises embracing about 30 acres, and that between that slough and the premises of the plaintiff there was a ridge or elevation; and that the defendant had excavated a tile drain some 40 rods in length through a portion of said slough and through the elevation or ridge between the slough and the premises of the plaintiff, making the ditch at said elevation about 12 feet in depth, and that the water when discharged through said ditch would, by means of a depression in the natural surface, pass onto and over the land of the plaintiff. At the time the suit was instituted the ditch or drain had been practically completed; the defendant having been occupied about a month in its construction. The slough on the defendant's land was during some seasons dry, and the land cultivated, but at the time the suit was instituted this slough, embracing, as before stated, about 30 acres, was covered with water to a depth of from 4 to 8 inches, and therefore was not in a condition to be used for farming purposes, unless drained. It may be added that the water when flowing from said slough through the ditch or drain and onto the plaintiff's premises would by means of a depression in the surface of

the country find its way to the lake before spoken of within the premises of the plaintiff,, though the ditch or drain did not extend onto plaintiff's premises and discharge the water therefrom a short distance from plaintiff's premises. We are of the opinion that the owner of land on which there is a slough or reservoir of surface water cannot lawfully discharge it through an artificial channel upon the land of another to his injury. It therefore follows from the facts disclosed by the record in this case that the plaintiff had a legal right to occupy his own land free from the discharge of any waters thereon through an artificial ditch or drain constructed by the defendant in order to drain his slough or pond caused by the accumulation of surface waters therein. The plaintiff was in possession of a legal right, therefore, which was threatened to be violated by the act of the defendant, and was entitled to an injunction to prevent the defendant from discharging the waters of said slough through said artificial ditch or drain upon his land.

Mr. Farnham in his work on Waters and Water Rights, vol. 3, p. 2623, in discussing this question, says: "A landowner is not permitted to use the land of his neighbor to relieve his own land of a burden naturally resting upon it. Therefore he cannot, in case the surface is such as to collect and hold water in ponds and marshes, dispose of it by simply turning it upon the property of his neighbor. As said by the Rhode Island court, the right to fight surface water does not go so far as to justify a man's draining the puddles of his own land into the well and cellar of his neighbor. Therefore, if an artificial pond has been created on the property of one owner, he cannot cast the water onto lower property, nor can he drain natural ponds onto the property of his neighbor if injury will thereby be caused to him, nor can a marsh or swamp be drained under these circumstances. And under no circumstances can the water be removed by draining it in a direction in which it would not naturally run. Injunction is an appropriate remedy to protect a landowner from injury by such acts, but, if the land on which the stagnant water rests can be relieved of it without injury to the adjoining property, it may be

done." The leading case upon this subject is Pettigrew v. Village of Evansville, 25 Wis. 223. In that case it was held as appears by the head notes that: "The owner of land on which there is a pond or reservoir of surface water cannot lawfully discharge it through an artificial channel directly upon the land of another, greatly to his injury. The fact that such artificial channel does not extend entirely to the other party's land will not affect the question. Where the injury from such discharge would be permanent, it will be restrained by injunction." And in the course of .the opinion the court says:. "The defendants propose by digging the ditch to drain the waters of the natural reservoir which now gather into it from a considerable distance over the surface of the surrounding country, and thence escape only by percolation and evaporation, and turn them immediately upon the land of the plaintiff, greatly to his injury, as the court below has found. This is a direct injury, as direct as if the defendants had proposed, without compensation, to throw upon the plaintiff's land earth, gravel, stone, or other materials, which it became necessary for them to remove from the street in order to improve it. It is an injury in its nature as direct as if one were by spouts or troughs to turn the water from his roof immediately upon the soil of his neighbor, which all the authorities agree cannot be done." After discussing some authorities, the court further says: "All the other cases cited are to the point that one proprietor of land has no legal, and can acquire no prescriptive, right to have the surface water accumulating on his own land by the falling of rain or the melting of snow flow off onto or over the land of an adjoining proprietor as it has been accustomed and would in the future continue to do were the land of such adjoining proprietor suffered to remain as in a state of nature; nor can such adjoining proprietor, in case the flowing of the water off, onto, or over his land should be beneficial to him, claim the legal right, or acquire the privilege by prescription, of having the same continue against the will of the owner upon whose land the water actually falls and accumulates. And the same rule holds good when applied to subsurface water passing through the earth by percolation. Luther v. Winni-

simmet Co., 9 Cush. (Mass.) 171; Ashley v. Wolcott, 11 Cush. (Mass.) 192; Goodale v. Tuttle, 29 N. Y. 459; Rawston v. Taylor, 33 Eng. Law & Eq. 428; Broadbent v. Ramsbotham, 34 Id. 555; and Ellis v. Duncan, 21 Barb. (N. Y.) 230, are all cases of this nature. The principle upon which those decisions rest is very obvious. It is that the loss or damage to the land of any proprietor caused by the presence of surface water collected by the melting snow or the falling of rain thereon must be borne by himself, and that he cannot lawfully insist or claim by prescription that the same or any part thereof shall be sustained by the adjoining or other proprietor of land, even though the land of the latter was so situated in a state of nature that it would have received the water and sustained the loss. * * * It is the duty of every owner of land to do so without material injury or detriment to the lands of his neighbors, and, if he cannot, he must suffer the inconvenience arising from its presence, and cannot complain that others refuse to allow its passage over their lands. Such is the sound and wholesome doctrine of the law upon this subject; and although it does not go so far as to require the owner to resort to any artificial means to prevent the surface water from his land flowing onto the land of another, when such flowing is produced by natural causes, yet it will prevent him from using such means for the purpose of making it flow there whenever the same would be materially injurious to the interests of the proprietor thereof." Again the court says: "We know of no adjudged case where it has been held that the waters of a natural pond or reservoir upon the land of one person may be drained by him directly upon the land of another greatly to his injury, nor where one owner has been allowed by means of a ditch, trench, sewer, or the like to gather the surface water from his own land and throw it upon the land of another, so as materially to lessen its value and produce injury to the owner. Such a proceeding would be contrary to natural right and justice, and the law does not sanction it." We have quoted at considerable length from the foregoing opinion for the reason that it is directly in point in this case upon the two questions presented by this appeal as to the right of the owner of

property to discharge waters accumulated on his premises by means of an artificial ditch over the premises of another, and for the reason that in that case, as in the present case, the waters were not discharged directly upon the property of the party complaining, but at some distance therefrom, but which by means of gravity would descend upon the land of the party complaining, and for the further reason that the question was very fully considered by that court, and the law applicable to that class of cases very ably and fully discussed. In the late case of Borchsenius, v. Chicago, St. P., M. & O. Ry. Co., 96 Wis. 448, 71 N. W. 884, that court quotes with approval from the Pettigrew Case.

In Miller v. Laubach, 47 Pa. 154, the Supreme Court of Pennsylvania in its opinion says: "No doubt the owner of land through which a stream flows may increase the volume of water by draining into it without any liability to damages by a lower owner. He must abide the contingency of increase or diminution of the flow in the channel of the stream because the upper owner has the right to all the advantages of drainage or irrigation reasonably used as the stream may give him. But that is an entirely different thing from draining the water standing on the lands of one through artificial channels onto that of another. That cannot be done without his consent, and this was the substance of the charge below." To the same effect are the following cases: Adams v. Walker, 34 Conn. 466; Miller v. Laubach, supra; Nevins v. City of Peoria, 41 Ill. 502; Schuster v. Albrecht, 98 Wis. 241, 73 N. W. 990; Gregory v. Bush, 64 Mich. 37, 31 N. W. 90; Kauffman v. Griesemer, 26 Pa. St. 407; Barkley v. Wilcox, 86 N. Y. 140, 40 Am. Rep. 519; Noonan v. City of Albany, 79 N. W. 475; Breen v. Hyde et al., 130 Mich. 1, 89 N. W. 732; Foot v. Bronson, 4 Lans. (N. Y.) 47; Vernum v. Wheeler, 35 Hun. (N. Y.) 53; Anderson v. Henderson, 124 Ill. 164, 16 N. E. 232; Crabtree v. Baker, 75 Ala. 91; Dayton v. Drainage Com'rs, 128 Ill. 271 N. E. 198. On rehearing in the Pettigrew Case, supra, it was contended by the petitioners that the water in that case by means of the ditch was not turned directly upon the property of the adjoining owner, but was allowed to be discharged from the ditch at some distance from

the plaintiff's property. After discussing the findings of the trial court, the Supreme Court says: "Now, upon this state of the case, we regard it as wholly immaterial that the findings of the court were not more specific as to the point where the ditch was to terminate, or that it was to end, if such was the proof, from 12 to 20 rods from the line of the plaintiff's land. The gist of the complaint was that the digging of the ditch would turn the waters of the pond upon the land of the plaintiff, greatly to his injury; and that fact the court found, and it is not controverted by counsel. And we cannot assent at all to the position of counsel that because the ditch was not to be extended quite up to the plaintiff's line, and the water conducted upon his land in that manner, the injury was of that indirect and consequential kind for which the village is not responsible."

Applying the doctrine as laid down by Farnham and by the authorities which we have cited to the case at bar, it necessarily follows that the defendant had no legal right to relieve his own premises of surface water by constructing an artificial ditch or drain to carry it off onto the land of the plaintiff to the plaintiff's material damage. The counsel for the defendant quoted from the opinion of this court in the case of Quinn v. Chicago, M. &. St. P. Ry. Co., 120 N. W. 884, 22 L. R. A. (N. S.) 789; but it will be noticed in that case that the railroad had constructed an embankment which prevented the water running in its natural channel causing it to flow back upon the land of the plaintiff, and thereby caused the plaintiff injury to his property and the loss of crops. There is no analogy, however, between that case and the case at bar. Here there was no natural water course from the defendant's land extending over the land of the plaintiff. The water accumulating in the slough of the defendant could only find an outlet over the plaintiff's premises by the construction of an artificial ditch, there being no natural channel in which the waters could flow from the slough over and onto the premises of the plaintiff.

It is further contended by the defendant that the plaintiff was guilty of laches in not sooner instituting the action to enjoin the defendant, but in our opinion there is no merit in this contention.

The defendant was constructing the ditch upon his own land, and while so constructing it the plaintiff had no right to complain of the acts of the defendant. It was only when the defendant was about to drain the water from his slough through the ditch and drain upon the land of the plaintiff that his right to enjoin the defendant accrued. It was not the construction of the ditch or drain that gave the plaintiff a right of action, but the threats of the defendant to turn the waters from his slough through said ditch or drain upon the premises of the plaintiff; hence there was no laches on the part of the plaintiff that estopped him from maintaining his action for an injunction.

It is further contended by the defendant that an injunction was not the proper remedy, and that the plaintiff had an adequate remedy at law to recover damages, but we are of the opinion that the trial court was right in taking the view that the case was one proper for the issuance of an injunction, for the reason that the act or trespass complained of by the plaintiff was necessarily to be a continuing act or trespass upon the rights of the plaintiff. This point was raised in the Pettigrew Case, supra, and in discussing it the court says: "Another and the last objection arises a question, perhaps, of more doubt. It is whether the proceedings by injunction can be sustained to prevent the injury. This depends altogether upon the nature of the injury. If it be permanent, or such as will continue to operate in all future time, then the proceeding can be sustained; but if only temporary, or such as will cease when the waters of the pond are once drawn off, then it cannot." It has long been the policy of the law to prevent a multiplicity of actions, and where a trespass is a continuing trespass, in order to prevent such multiplicity of suits, a court will enjoin the continuance of the same. Clearly, in the case at bar, if the ditch or drain were permitted to be used by the defendant, it will continuously, or at such times at least as waters accumulate in the said slough, discharge them upon the premises of the plaintiff. In view of the facts as presented by this record, we are of the opinion that the case was a proper one for an injunction, and that the plaintiff should not be required whenever the waters are discharged from such ditch over his land to institute an action

for damages. Page v. Huckins, 150 Mich. 103, 113 N. W. 577; Gregory v. Bush, 64 Mich. 37, 31 N. W. 90, 8 Am. St. Rep. 797; Schuster v. Albrecht, 98 Wis. 241, 73 N. W. 990, 67 Am. St. Rep. 804; Hunter v. Cincinnati H. & D. R. Co., 7 Ohio N. P. 202; Weddell v. Hapner, 124 Ind. 315, 24 N. E. 368; Vernum v. Wheeler, 35 Hun. (N. Y.) 53; Mellor v. Pilgrim. 7 Ill. App. 306; Stout v. Kindt, 24 Pa. 449.

The contention of the defendant that the court upon the coming in of the answer denying the equities of the complaint should have dismissed the action is not tenable under our system of procedure. In the case of Huron Waterworks Co. v. City of Huron, 3 S. D. 610, 54 N. W. 652, this court held as appears by the headnotes that: "A dissolution, like the granting of injunction, is largely a matter of judicial discretion, which must be determined by the nature of the particular cause under consideration. While it is a well-settled rule that, when the sworn answer fully and unequivocally denies all the material allegations of the complaint upon which the complainant's equities rest, the injunction will be dissolved, yet such rule is not without exception, and a court may in the exercise of a sound discretion refuse a dissolution when there is ground for apprehending some irreparable injury or great hardship, if the injunction is dissolved before the hearing of the case upon the merits. When the rights of the defendant are protected by a good and sufficient bond, so that no injury can result from a continuance of the injunction, its continuance is to some extent a matter of discretion, and this discretion should be exercised in favor of the party most liable to be injured." In the case at bar it will be noticed that the court, instead of dissolving the temporary injunction, permitted the plaintiff and defendant each to file additional affidavits, and upon the hearing the court denied the motion to dissolve. Clearly under the authority of the case above cited of Huron Waterworks Co. v. City of Huron the court was fully justified in denying the defendant's motion. But, in the view we take of defendant's answer, his contention that all the equities of the complaint were denied cannot be sustained. The defendant in his answer admitted that the plaintiff was the owner, and in possession of

the premises described in the complaint, and resided thereon with his family, and cultivated portions of the same, but defendant alleged that the plaintiff had never cultivated any portion of said land which is covered by the large lake, a part of which, to-wit, about 30 acres, is on the north part of plaintiff's land, that said lake contained a water area of about 250 acres, and is about 10 feet deep and is a permanent lake or pond with deep, abrupt banks, admits that the defendant is the owner and in possession of the premises described in the complaint, and alleges that upon the defendant's farm is a shallow slough covering about 30 acres of good agricultural land, which, if dry, could be tilled and cultivated to advantage; that running through defendant's said land is a natural ravine or water course which runs in a northerly direction through the plaintiff's said land, and into the said large pond or lake; that, in order to drain said shallow slough, the defendant excavated a tile drain therefrom running into said natural water course, all of said ditch being upon the defendant's said land, and none thereof upon the plaintiff's land, and the same being about 40 rods long; that said ditch is cut 3 feet deep from the bottom of said slough and the deepest cut throught which it goes is about 12 feet deep; that said method of drainage is the only practical method, and the only method, without cutting a ditch into the land of some other owner. Clearly these admissions and denials failed to rebut the equities alleged in the plaintiff's complaint. As will be noticed, the defendant admits the existence of the slough on his own land; that in order to get to what he claims to be a water course required him to make a drain or cut 12 feet in depth in one place, and it is alleged in the answer that he had proceeded to make said drain or ditch, and de does not deny that he was intending to so discharge the waters from said slough in such a manner that they would naturally extend onto and over the premises of the plaintiff. It is quite clear, therefore, that the court was not only justified under the decision of this court above referred to, but was fully justified by the admissions and allegations in the answer in granting a temporary injunction.

Finding no error in the record, the order of the court below granting the temporary injunction is affirmed.

HANEY, J. I concur only in the conclusion that the order appealed from should be affirmed.