POLLUCK, Respondent, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellant.

(166 N. W. 641.)

(File No. 4236.    Opinion filed March 8, 1918.    Rehearing denied May 7, 1918.)

1. **Master and Servant—Recovery for Personal Injury—Federal Employers' Liability Act—Employee of Independent Contractor, Defense—Control of Work—Sufficiency of Evidence—Rule.**

    In a suit to recover damages for personal injury, under Federal Employers' Liability Act of Apr. 22, 1908, Ch. 149, 35 Stat. 65; U. S. Comp. St., 1916, Secs. 8657-8665; Fed. Stat.

Ann., 1909, Supp. 584, Sec. 1, the defense being that plaintiff was not employed by defendant interstate carrier, the testimony showing that plaintiff, at the time of the injury, was employed to keep certain coal chutes filled with coal and to keep ashes out of a turn-table pit, under an oral agreement with one who was an independent contractor of defendant, who hired and paid defendant for his services, and could discharge him if the work was not satisfactory, **held**, that the evidence showed that defendant railroad did not retain control over the manner of doing the work, nor the time of the independent contractor or his helpers; that the control reserved by defendant was merely of results, but not of time or means; that if the contract between plaintiff and the independent contractor was valid under the Federal Act, plaintiff was not, at the time of the injury, employed by defendant, within the meaning of such act. So **held**, in view of said Sec. 1, providing that every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is "employed by such carrier" in such commerce * * * resulting in whole or part from the negligence * * *" etc.

**2.   Master and Servant—Servant, Common-law Definition of—Statute, as Codification of**

Civ. Code, Sec. 1476, defining a servant, is but a codification of the common-law definition of a servant.

**3.   Courts—Federal Decision, When Binding on State Court—Federal Statutes, Construction of.**

Where a case involves a construction of a federal statute, such as the Employers' Liability Act, the decisions of the Supreme Court of the United States are binding upon a state court.

Appeal from Circuit Court, Codlington County. Hon. CARL G. SHERWOOD, Judge.

Action by Stanley Polluck, against the Minneapolis & St. Louis Railroad Company, to recover for damages for personal injury. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*Case & Case,* and *M. M. Joyce,* (F. M. Miner, of counsel) for Appellant.

*Barton & Kay,* and *Mather & Stover,* for Respondent.

(1)   To point one of the opinion, Appellant cited: 26 Cyc. 970, 971; Hale v. Johnson, 80 Ill. 185; Whitney & Sherron Co. v. O'Rourke, 50 N. E. 242; Bailey on Personal Injuries, second ed., page 102; Humpton v. Unter Kirker (Iowa) 66 N. W. 776;

Loughen v. Hewes, 130 Cal. 116, 70 Par. 1065; Waters v. Pioneer Fuel Co. (Minn.) 55 N. W. 52; LaBatt's Master & Servant, Second Ed., Volume 1, Section 34; Whitney & Ferrous Co. v. O'Rourke, 50 N. E. 242; Bailey on Personal Injuries, Second Ed., Vol. 1, page 110, and cases cited; Civ. Code, Sec. 1476; Curtis v. Dinneen, 4 Dak. 245; Union Pacific Railway Company v. Vieller, 28 Neb. 422; Brandstrator v. Keokuk & Western Ry. Co., (Ia.) 79 N. W. 130.

Respondent cited: C. R. I. & P. Ry. Co v. Bond, 240 U. S. 449, 36 S. C. Rep. 403; Lehigh Valley Coal Co. v. Yensavage, 218 Fed. 547; Singer Mnfg. Co. v. Rahn, 132 U. S. 518; 10 S. C. Rep. 175; Moffet v. Koch, 106 La. 371, 31 So. 40; Maddix v. Hochgreve Brewing Co., 154 Wis. 448, 143 N. W. 189; State v. District Court, 128 M. 43, 150 N. W. 211; C. R. I. & P. Ry. Co. v. Bennett, (Okla.) 128 Pac. 705; North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 S. C. 305; Waters v. Pioneer Fuel Co., 55 N. W. 52, 52 Minn. 474; Corrigan v. Elsinger, 83 N. W. 492, 81 Minn. 42.

GATES, J. On the evening of October 11, 1915, plaintiff was injured at Watertown, S. D., by a locomotive of defendant at an ash pit at the roundhouse of defendant. This action was brought to recover for such injury under the federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, U. S. Comp. St. 1916, §§ 8657-8665, Fed. Stat. Ann. 1909 Supp. 584, the first section of which is as follows:

"Every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * resulting in whole or in part from the negligence. * * *"

Verdict and judgment were for plaintiff. Defendant appeals from the judgment and an order denying a new trial. Plaintiff concedes that, if he was an employe of an independent contractor, he was not entitled to recover in this case. Defendant does not contend that plaintiff and defendant were not then engaged in interstate commerce, but does contend that plaintiff was not "employed by such carrier," and therefore that it is not liable under the said federal act. Assuming that plaintiff and the locomotive of defendant were, at the time of the injury,

engaged in interstate commerce, the main question is whether plaintiff was an employe of the defendant, within the meaning of said act, or was in the employ of an independent contractor.

One Snaza entered into an oral contract with defendant to keep certain coal chutes filled with coal and to keep the ashes out of a turntable pit. The coal chutes were at an elevation so that the coal could be dumped therefrom into the defendant's locomotives. Snaza testified:

"I had the job for the Minneapolis & St. Louis road to handle their coal down to the coal pits. I did not have any contract, but they told me I should work the same as contract. I had an arrangement with them, but it was not in writing. It was an oral agreement which I agreed to shovel the coal and keep the cinder pit clean for so much per ton, and I was to hire the men necessary to assist. I was to hire them and I paid them, and they were responsible to me. If any of the men did not do the work satisfactorily, I discharged them. If they did not keep the coal shoveled as I had agreed to do, Mr. Gossett would complain to me because it was not done. He insisted that I must do the work as I had agreed to."

Again he testified:

"I did not have no contract or paper signed with the Minneapolis Railroad Company for shoveling coal or cinders covering the fall and including October 11, 1915, but I was told I could do just like I had a contract. They told me I got a contract and I should furnish the men and furnish everything as it is supposed to do."

Plaintiff testified that Snaza employed him, that he was working for Snaza, and that Snaza paid him. He further testified:

"Q. What controlled the question of when you would be shoveling coal; or, in other words, when did you know when to shovel coal? A. Because there was no coal in the coal chute, we went to shoveling coal, some engines been late. Did not come in; we had enough. When they all came all at once we did not have enough, and have to fill them again. There were five coal chutes. They would each hold four of five tons. I do not know how many engines there would be a day. On some days there would be less than eight. These engines come in every

day for coal, once a day. Some engines come in more than once a day for coal or water or dumping cinders; there are two of us shoveling coal or cinders. We received instructions as to shoveling coal and cinders from Pat Gossett. We did not get from him or any one else instructions as to when to shovel the coal and cinders and when to wet them down. Q. Well, when did you know when to shovel cinders? A. When the pit was pretty near full."

[1] We think the evidence conclusively shows that defendant did not retain control over the manner of doing the work, and it certainly did not control the time of Snaza or his helpers. Just so long as the chutes contained sufficient coal for the engines that would come in, and just so long as the ash pit was kept reasonably free from cinders, the plaintiff and his employer Snaza were the judges of their hours of work. The control reserved by defendant was of results, but not of time or means. 14 R. C. L. 68; Labatt, Master & Servant (2d Ed.) § 34. We think this case falls within the reasoning laid down in the similar case of Chicago, R. I. & P. Ry. Co. v. Bond, 240 U. S. 449 36 Sup. Ct. 403, 60 L. ed. 735, arising under the same act of Congress, wherein the court held that the injured person was not an employe but an independent contractor. In that decision the court said:

"There was, it is true, and necessarily, a certain direction to be given by the company, or rather we should say information given to Turner. But the manner of the work was under his control, to be done by him and those employed by him. He was responsible for its faithful performance and incurred the penalty of the instant termination of the contract for nonperformance. This was only a prudent precaution, indeed, necessary in view of the purpose of his contract, which was to make provision for a daily supply of coal for the operation of the railroad. The power given was one of control in a sense, but it was not a detailed control of the actions of Turner or those of his employes. It was a judgment only over results and a necessary sanction of the obligations which he had incurred. It was not tantamount to the control of an employe and a remedy against his incompetency or neglect."

The distinguishing features of that case were that there the

contract was in writing and the contractor absolved the railway company from liability for injury to himself and his employes, but those distinguishing features are to our minds unimportant.

[2]    Respondent relies, among many others, upon the decision in North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914C, 159. But that case turned upon the proposition that the local law made the lessor liable for the negligence of the lessee. Our attention has not been called to any provisions of the laws of South Dakota which change the common-law definition of a servant. Indeed, section 1476, C. C., is but a codification of that definition.

[3]    This is a case involving the construction of a federal act, and therefore the decisions of the Supreme Court of the United States are binding upon us. Believing that the decision in Chicago, R. I. & P. Ry. Co. v. Bond, supra, is decisive of the principal question presented in this case, it is our duty to follow it, and we therefore hold that, if the contract with Snaza was valid under section 5 of the federal act (U. S. Comp. Stat. 1916, § 8661; Fed. Stat. Ann. 1909 Supp. 585), the plaintiff was not, at the time of the injury, employed by the defendant within the meaning of such act. This conclusion renders unnecessary a consideration of the other errors assigned.

Nothing herein stated should be taken as an intimation of our views as to the right of plaintiff to recover damages as a nonemploye. We also expressly refrain from passing upon the question as to whether or not the contract between the defendant and Snaza was invalid as an evasion within the meaning of section 5 of said act. That question was raised in the Bond Case, supra, but was not in any manner raised in this case.

The judgment and order appealed from are reversed.