LEE. et al, Respondents, v. GULBRAA, Appellant.

(180 N. W. 946.)

(File No. 4598.   Opinion filed January 7, 1921.)

**Drainage—Large Upper Watershed Lakebed, Owner Connecting Same by Ditch With Lower Slough On Adjoining Land—Slough Ordinarily Dry—Water Ordinarily Unconnected Between Lakebed and Slough—Slough Water Unescapable—Right to Construct Ditch.**

Where evidence sustained findings that between a large upper lakebed on defendant's land, which bed was a considerable watershed, and a lower slough upon the border of defendant's land and extending upon plaintiffs' land there was a ridge of land some twenty-five rods wide and eight or ten feet higher than lakebed; that the lakebed was usually filled with water from two to five feet deep, and was from one to four feet deep when suit began; that in springtime from snows and heavy rains surface waters accumulated therein, but that ordinarily the waters from the lakebed do not run to and upon the hay meadow in the lower slough; that defendant constructed through said ridge a ditch from six to eight feet deep and about four feet wide at top, and opened same into the lakebed, whereupon the waters therefrom ran out into the lower slough upon plaintiffs' land and were inundating same when suit began; that the lower slough bed is surrounded by high banks preventing escape therefrom of water coming in from above; **held,** that the findings sustain the conclusion that there is not and never was any natural water-course between the two sloughs, and defendant had no legal right to cut the natural embankment thereby permitting waters from the lakebed to escape and flow upon respondents' land to his continuing injury and damage; and trial court rightly refused to find that the ditch was constructed along the natural course of drainage from the lakebed to the lower slough, and that water had been known to flow from said upper to said lower slough along the line of the ditch, and that the ditch was a deepening of a natural ravine or cut in the bank of the upper slough.   **Held,** further, that the fact that the lakebed on defendant's land is crossed by a highway grade or embankment is immaterial under the issues.

Whiting, J., and Polley, P. J., dissenting.

Appeal from Circuit Court, Day County.   Hon. Thomas L. Bouck, Judge.

Action by Johanna Lee, and John Herbert Lee and others, minors, by Johanna Lee, their guardian ad litum, against Claus

J. Gulbraa, to restrain defendants from constructing and maintaining a certain ditch between two sloughs, one on plaintiffs', the other on defendants' land. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

*Lund & Halls,* for Appellant.

*Anderson & Waddel,* for Respondents.

Appellant cited: Thompson v. Andrews, (S. D.) 165 N. W. 9; Note in 19 L. R. A. N. S. 169; Fenton & T. R. Co. v. Adams, 112 Am. St. Rep. 171, 77 N. E. 531.

McCOY, J. This action was instituted by plaintiffs to restrain the defendant from constructing and maintaining a certain ditch between two sloughs, one on the land of plaintiffs and the other on the land of defendant. Findings and judgment were in favor of plaintiffs, and defendant appeals.

At the conclusion of the trial, the appellant, among others, requested, and the court refused to make, certain findings of fact substantially as follows: That said ditch was constructed along the natural course of drainage from said upper to said lower slough, and that water had been known to flow from said upper to said lower slough along the line of said ditch; that said ditch was constructed along and was a deepening of a natural ravine or cut in the bank of said upper slough. To which refusal appellant excepted.

The court, among others, made substantially the following findings: That on the lands heretofore described as belonging to the defendant and extending upon other lands there was and is a large slough or lake bed covering approximately 70 acres of land; that said slough is usually filled with water from 2 to 5 feet deep; that at the time of the commencement of this action the water thereon was approximately 1 to 4 feet deep; that said slough bed received the water from a large watershed, covering several hundred acres of land, draining into said slough for a distance of 2 to 3 miles; that in the springtime from snows and heavy rains surface waters accumulate and gather in said slough; that at the time of the commencement of this action there was and now is on the lands of respondent a depression or piece of low land not to exceed 30 acres in extent, usually fit for hay or meadow; that in ordinary seasons said slough bed or hay meadow

is dry; that said slough bed extends from the said lands of respondent to and upon the lands of appellant; that the said slough bed, most of which is on the lands of respondent, is 8 to 10 feet lower than the bed of the larger slough on the lands of appellant; that the watershed or territory naturally draining into said hay meadow, or smaller slough, on the lands of respondents is small, covering not to exceed one-half section of land; that between the large slough on the lands of defendant and the smaller slough bed, and on the lands of appellant, there is a natural hill or embankment from 8 to 10 feet higher than the bed of the larger slough on appellant's land, and which hill or embankment is from 25 to 30 rods in width; that under natural and normal conditions the waters from the lake bed on appellant's land cannot and do not run to and upon the hay meadow on respondents' land; that in the month of November, 1917, appellant dug and excavated a ditch through said barrier or hill between said sloughs, and at the time of the commencement of this action had completed and perfected said ditch; that the same was from 6 to 8 feet deep, and and approximately 4 feet wide at the top, and that upon the completion of said ditch appellant opened the same into the slough on his land, and that the water then and there began to run out of said slough on appellant's land through said ditch, a distance of approximately 30 rods, to and upon the said meadow of respondents, and that at the time of the commencement of this action the said waters were flowing upon and inundating the said lands of respondents.

It appears from the record that the said slough bed situated upon the lands of respondents is surrounded by high banks, and that additional water thrown thereon into said slough do not and cannot escape therefrom and spread our or pass over other lands.

We have carefully examined the evidence preserved in the record, and are of the view that the same is sufficient to support the findings of the trial court. We are also of the opinion that the evidence sustains the conclusion that there is not, and never was, any natural water course between the two sloughs in question, and that appellant had no legal right to cut the natural embankment between said sloughs with a ditch, thereby permitting the waters from the said slough upon the lands of appellant to

escape and flow to and upon the lands of respondent, to his continuing injury and damage.

The facts in this case, as found by the trial court, are not within the reason of the rule announced in Thompson v. Andrews, 39 S. D. 477, 165 N. W. 9. The facts of this case are substantially in accord with those in Venner v. Olson, 40 S. D. 585, 168 N. W. 740, Anderson v. Drake, 24 S. D. 216, 123 N. W. 673, 27 L. R. A. (N. S.) 250, and Boll v. Ostroot, 25 S. D. 513, 127 N. W. 577.

The fact that the larger slough on appellant's land is crossed by a highway grade or embankment is wholly immaterial so far as any of the issues of this case are concerned.

Finding no error in the record, the judgment and order appealed from are affirmed.

WHITING, J. (dissenting.) I am unable to concur in the foregoing opinion. I believe that the undisputed facts of this case are such that, when we apply thereto the law announced in Thompson v. Andrews we must reverse the judgment of the trial court. My colleagues refer to Anderson, Venner, and Boll cases, and declare the facts in this case substantially in accord with the facts in those cases. In the Anderson case, the decision of this court turned on the fact that the water in question was not "surface water." In the other two cases, it was sought to conduct the water out of basins into drainage courses, into which water from these basins had never flowed. It is true that, in the Anderson case, we said that permanent waters could not be artificially drained even through a ditch in the natural channel; but we also said that we did not wish to be understood as holding that ponds or sloughs of a temporary nature, could not be drained for purposes of husbandry, or as holding that waters which would naturally seep and flow in a fixed direction could not be hastened in such direction by a ditching, even if by so doing more water would be discharged on the servient estate than would have been without ditching.

This court will take judicial notice of matters of current history and of local geographical conditions such as the general conditions of the surface waters of the state during years past. We must therefore take notice that, for a long period prior to about the year 1913, the amount of surface water in this state

was materially less than it has been since. It appears that at a former period of abundant surface waters the water ran from the upper slough into the lower through a ditch, and that it is this natural ditch which defendant lowered for the purpose of draining the upper slough; that waters from the upper slough seeped into the lower one; that, under normal conditions, the slough sought to be drained by defendant was dry, and parts thereof had been cultivated, and also that hay had been cut upon the same.; and that, prior to 1913, plaintiffs had been able to cut hay off their land although they had harvested hay during but three seasons in all, the last being that of 1913, when a part of their hay was covered by ice. There was no evidence from which the trial court could rightfully find that the flow of water from the upper to the lower slough would raise the water in the lower one, or in any way tend to render the lower one of less value to its owners; but there was evidence that, owing to the sand and gravel found in the banks of the lower slough water there would never rise above a certain heighth. Just as in Thompson v. Andrews, the facts of this case disclose that it is because of the changed seasons that the lower slough is rendered unfit for hay, a condition it has been in ever since 1913.

In Thompson v. Andrews, we said:

"The lower landowner cannot sit back like the 'dog in the manger' and say to his neighbor: You had no easement under which you had a right to discharge waters from your lands across mine, and I will therefore not permit of such discharge even though it will result in no material damage to me."

The trial court found that plaintiffs are the widow and minor children of a deceased person, and the owners of but one quarter of land, of which a portion of the lower slough is a part; while the defendant is the owner of much other property than the land referred to in this action, and is a well-to-do and prosperous farmer. I am at a loss to understand upon what theory it could be held that the above facts, if true, are material; and I am fearful that the trial court, because of his splendid virtues, lost sight of the law through his mistaken sympathy for the widows and orphans.

While the facts of this case bring it in line with the case of Thompson v. Andrews, and the defendant had an easement to

drain the waters from the one slough into the other, yet, disregarding that fact and assuming that no such easement existed, still, when we consider that plaintiffs wholly failed to prove that they would be damaged by the draining of the upper slough, they failed to establish any right to the injunction sought.

POLLEY, P. J., concurs with Judge WHITING'S dissent.