JOHNSON, Respondent, v. METROPOLITAN LIFE
INSURANCE CO., Appellant

(22 N. W.2d 737)

(File No. 8776.   Opinion filed May 6, 1946.)

156

**Bailey, Voorhees, Woods & Fuller,** of Sioux Falls, for Appellant.

**Robert D. Jones,** of Milbank, for Respondent.

RUDESILL, Circuit Judge. The plaintiff, respondent herein, sought to enjoin defendant, appellant herein, from continuing to maintain a drain whereby it drained water from its land, which water was eventually discharged upon and across the land of the plaintiff. Findings and judgment were for the plaintiff and the defendant appealed.

It appears from the undisputed evidence that the plaintiff is the owner of the west half of the southwest quarter and the southwest quarter of the northwest quarter of Section 15, Township 118 of Range 49, situated in Grant County, South Dakota, and defendant is the owner of the northeast quarter, Section 21, same township and range; that plaintiff has owned his land since February, 1942, and defendant has owned its land for some years. The natural drainage age is northeasterly, that is, from the defendant's land to the plaintiff's land. On the defendant's land are two sloughs or depressions and the land is well filled with water or dry, depending upon the season and the time of the year. About 1916 the owner of the upperland constructed a tile drain from the upper slough, which contained approximately three acres, to the lower slough, containing approximately nine acres, thence through an elevation or barrier at the lower point of the nine-acre slough, thence across other land (not belonging to the parties herein), to the highway between the land belonging to the parties so that the water flowing through the tile drain discharged on the land belonging to the plaintiff. The water so discharged followed a natural depression or watercourse. The testimony of the plaintiff is

clear that there was a natural run through his land. In case of an overflow of the lower slough the overflow water would naturally flow down this same depression or watercourse. The learned trial judge found that said sloughs or basin did not have any outlets and that there is no way for the surface water which accumulates in said sloughs can be carried away in a natural course of drainage through a natural watercourse. If such a finding is in conflict with the statement that in case of an overflow of the lower slough the overflow would naturally flow down the same depression or watercourse as indicated in the finding, then such finding does not follow the evidence as the statement that in case of such an overflow the water would flow down such watercourse is undisputed. The witness Hyde so testified as the surveyor and a witness for the plaintiff.

There are three points argued: 1. The defendant has the right to drain its slough under the law of Thompson v. Andrews, 39 S. D. 477, 165 N. W. 9, and under SDC 61.1031. 2. That an easement has been acquired by prescription, the tile having been installed since 1916. 3. That the cause of action was barred by the statute of limitations. If the first proposition is answered in the affirmative such answer is decisive of the case in issue.

SDC 61.1031 reads as follows: "Closed or blind drains; natural drainage. Closed or blind drains may be used whenever the same may be found practicable. Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural watercourse or into any natural depression whereby the water will be carried into some natural watercourse or into some drain on the public highway, with the consent of the board having supervision of such highway, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person. Nothing in this section shall in any manner be construed to affect the right or liabilities of proprietors in respect to running waters or streams."

In Thompson v. Andrews, supra, this court used the following language [39 S. D. 477, 165 N. W. 14]: "We hold

the rule to be that the owner of dominant agricultural lands, situate and lying in the upper portion of a natural drainage water course or water basin has, in the course of and for the purposes of better husbandry, a legal easement right, by means of artificial drains or ditches constructed wholly upon his own land, to accelerate and hasten the flow of waters that are surface waters under the rule herein laid down, and to cast the same into and upon a servient estate lying lower down in the same natural drainage water course, at that point where nature, by means of ravines or depressions, has indicated that such surface waters should find a natural outlet; provided, however, that such surface waters should not be collected or permitted to collect, and then be cast upon the servient estate in unusual or unnatural quantities; and, provided, also, that the surface waters of one natural watershed or basin may not, by means of the cutting or removal of natural barriers, be cast into or upon lower lands lying in another and different natural drainage course or basin."

In disposing of this case several things must be kept in mind. Surface waters in the main only become bothersome to the dominant tenement if they accumulate on the land. In general they will only accumulate if there is a depression on the land and if such depression ordinarily has no barrier at the lower end there would be no depression and no accumulation. It follows, therefore, that if there can be any right of drainage from the dominant estate to the servient estate there must be a cutting or ditching of the barrier . To deny this right is to deny the right to care for surface waters and the right of drainage and it seems as though it would give to the servient estate the absolute right to compel the dominant estate to preserve every depression or pond or slough as nature made it as a protection to the servient estate which would be a nullification of the ordinary right of drainage and the statute. This cannot be the rule.

It might be well to analyze the language of SDC 61.1031, which, in part, is as follows: "Owners of land may drain the same in the general course of natural drainage, by con-

structing open or covered drains, discharging the same into any natural watercourse or into any natural depression whereby the water will be carried into some natural watercourse * * *."

It would seem as though the defendant came clearly within the right herein given. It would seem as though the only limitation would be that he could not drain his pond and create another pond on the lower owner because then he would not be draining it into "any natural watercourse or into any natural depression whereby the water will be carried into some natural watercourse." Of course, he could not permit water to accumulate on his land and then discharge it in unusual or unnatural quantities.

This court has had for consideration several cases involving the right of drainage. In the order of time of decision these cases are: Anderson v. Drake, 24 S. D. 216, 123 N. W. 673, 27 L. R. A., N. S., 250; Boll v. Ostroot, 25 S. D. 513, 127 N. W. 577; Thompson v. Andrews, supra; Alsager v. Peterson, 31 S. D. 452, 141 N. W. 391, Ann. Cas. 1915D, 1251; Mishler v. Peterson, 40 S. D. 183, 166 N. W. 640; Venner v. Olson, 40 S. D. 585, 168 N. W. 740; Lee v. Gulbraa, 43 S. D. 493, 180 N. W. 946; Rae v. Kuhns, 44 S. D. 494, 184 N. W. 280.

An analysis of such cases would, in the Court's opinion, be informative. The case of Anderson v. Drake, supra, was disposed of on the ground that the water had lost its character as surface water before it left the owner's premises.

In the case of Boll v. Ostroot, supra, the Court granted injunction. In that case the upper owner was draining into a slough on the lower owner. According to the decision the waters so discharged were not carried through a natural depression into a natural watercourse. This would be in our view not allowable under the statute.

The case of Alsager v. Peterson, 31 S. D. 452, 141 N. W. 391, Ann. Cas. 1915D, 1251, is not material since the issue was as to the admissibility of testimony as to the impounding of water at the time of the trial and the Court held that it was material.

The case of Thompson v. Andrews, supra, involved the maintenance of a ditch to drain a basin or depression containing approximately 100 acres of land, which basin was dry on occasion and filled with water on occasions. The tile had been laid in 1894 near the ditch and under the barrier. In 1909 the tile becoming clogged, the ditch was deepened so as to drain the basin. In deciding the case the Court laid down the doctrine above quoted and used in addition the following language: "* * * the lower property is burdened with an easement under which the owner of the upper property may discharge surface waters over such lower property through such channels as nature has provided. Section 22, supra, fully recognizes such easement. It follows that the lands of this state were acquired subject to the law of easements for drainage of water; * * *."

It is to be noted in this case that the language by Judge Whiting is "may discharge surface waters over * * *," and not on.

Mishler v. Peterson, supra, was the next case to receive the attention of this Court, and in that case injunction was refused where defendant was draining ponds into a large slough on plaintiff's land and in deciding such case this court used the following language [40 S. D. 183, 166 N. W. 641]: "As will be observed from this statement of fact, the ponds on defendant's lands are in the same watershed or natural drainage basin as is the natural swale or depression across plaintiff's land and said slough."

The conclusion in such case may be questioned if it carries with it the doctrine of absolute right of simply dumping surface water on the lower land as this is not in accordance with the statute.

The case of Venner v. Olson, supra, involved an attempt to drain Wooley Lake. Injunction was granted holding that the drainage of Wooley Lake would throw the waters thereof into another and different drainage basin. So far as is disclosed by the decision Wooley Lake was a permanent lake, at least sufficiently so that survey meander lines were used. Apparently also there was no watercourse across the lower land or any natural depression from which the waters

would be discharged into any natural watercourse and marsh land was created on the lower land indicating that the water was not discharged over it but on it.

Lee v. Gulbraa, supra, was a case where the water could not escape from the lower owner's land but simply created a slough thereon.

Rae v. Kuhns, supra, presented a situation where the general course of natural drainage was changed by the drainage title and injunction was granted.

■ Summarizing we hold:

1. That the owner of dominant lands situate or lying in. the upper portion of a natural drainage water course or basin has in the course of and for the purpose of better husbandry, a legal easement right by means of artificial drains on ditches constructed wholly upon his own land or upon land of others where permission has been secured, the right to drain surface waters which would accumulate in depressions, basins, ponds or sloughs, on his land.

2. To do so he may construct ditches or artificial drains either covered or uncovered.

3. He may cut barriers or ridges at the lower end of temporary ponds, depression, basins or sloughs in order to so drain, provided, that such water then follows the course it would follow in case of an overflow over such barriers or ridges.

4. In doing so he must not permit an accumulation of water on his land and then cast such accumulated surface waters in unusual or unnatural quantities on the servient estate.

■ 5. A natural watercourse is defined as: "If the surface water in fact uniformly or habitually flows off over a given course, having reasonable limits as to width, the line of its flow is within the meaning of the law applicable to the discharge of surface water, a watercourse."

■ 6. Such waters must be drained into a natural watercourse or into any natural depression whereby the water will be carried into some natural watercourse.

■ In the instant case there were sloughs or ponds on defendant's land. The drainage from this territory was

northeasterly and along a natural watercourse as previously defined. The waters in case they became high enough would overflow at the point where the tile was placed and would follow the natural watercourse across the plaintiff's land which drained the territory. The ponds or sloughs were temporary in character.

In applying the rules as set out herein the defendant had legal easement to drain such ponds or sloughs even though the runoff would cross the plaintiff's land, by tiling, if necessary, and for so doing no action will lie. This disposes of the case and it is unnecessary to discuss the other points raised.

The judgment of the trial court is reversed and judgment is directed to be entered for the defendant.

All the Judges concur.

RUDESILL, C.J., sitting for POLLEY, J.