GUY FELLOWS, APPELLEE, v. BUFFALO COUNTY, A NEBRASKA CORPORATION, APPELLANT.

147 N. W. 2d 801

Filed January 13, 1967. No. 36357.

Andrew J. McMullen and John S. Mingus, for appellant.

Kenneth H. Dryden, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and POLLOCK, District Judge.

McCown, J.

This is an action for water damage to plaintiff's real and personal property. The damage was allegedly caused by failure of the defendant to provide sufficient drainage through a road fill constructed across a natural watercourse.

The jury returned a verdict for plaintiff for $1,400. After requiring remittitur of $371, the trial court entered judgment for the plaintiff for $1,029. The defendant county has appealed.

The plaintiff was the owner of 4 acres of property along Dry Creek, a tributary of Wood River. Dry Creek, in the area involved, was a small gorge with the winding bed of the creek approximately 30 feet below the level of the county road which crossed it. The plaintiff's blacksmith shop had been located for many years approximately 400 feet upstream from the road fill involved, and some distance from the bank of the creek. The level of the blacksmith shop was also approximately 30 feet above the creek bed. A bridge over Dry Creek was replaced about 1940 by the fill involved here which carried a two-lane county road. Before June 1965, the fill contained two circular culverts or flumes to permit the passage of water, one 5 feet in diameter and the other 42 inches. The 42-inch flume was placed in the fill sometime between 1951 and 1952, the 60-inch culvert having been there previously.

During all the years the blacksmith shop had been there, commencing before 1940 and continuing until June of 1965, there had been high water many times. Occasionally the water had reached the edge of the shop floor, but it had never gone into the shop. The fill had been washed out or partially washed out on many occasions. The heavy rainfall season ordinarily occurred in May, June, and July. In May of 1965, heavy rains and high water again occurred. The water again ran over the fill and washed out portions of it around both ends of the flumes or culverts. Again the water came close to

plaintiff's blacksmith shop, but did not get in. Following that occurrence, the defendant increased the height of the entire fill with a dirt and a loose gravel surface. The testimony as to the increased height varied from as much as 3 or 4 feet to "Two foot to the west and about six inches to the east." No additional flumes or culverts were installed. On June 27, 1965, there was again heavy rain and high water. On that occasion, the water went into the plaintiff's blacksmith shop to a depth of at least 16 inches above the floor according to defendant's witnesses, and 3 to 4 feet according to the plaintiff's witnesses, carrying silt and debris with it, and damaging the building and various items of personal property and equipment in it. The water remained in the shop and on the ground around it for more than 24 hours. When it receded, it left about a foot of mud or silt in the building and on the grade between the building and the driveway, together with litter and debris on the ground.

Some distance to the north and in the next section, a dam had been constructed in 1951 for irrigation and conservation purposes from which an overflow would place some water in the Dry Creek drainage basin which had formerly gone into another drainageway. The amount was described by the individual who constructed the dam as being "a measurable amount but not a great amount."

The defendant argues for the proposition that where a substantial amount of water from another source or sources has been added to the water for which the defendant is liable and the combined waters cause the damage, then it is incumbent on the plaintiff to establish either that his damage would have occurred from the waters for which the defendant is liable or to establish the amount of his damage that has been caused by the water for which the defendant is liable. Suffice it to say that the jury was specifically instructed to that effect and there is more than ample evidence to support the verdict, even if it be assumed that the defendant was not

liable for all waters carried by Dry Creek for 14 years.

One who builds a structure in a watercourse is charged with a duty to provide for the passage of all waters, ice, and debris which may reasonably be anticipated to flow or be carried therein, and what private proprietors may not do, neither may the public authorities, except in the exercise of eminent domain. See, Baum v. County of Scotts Bluff, 172 Neb. 225, 109 N. W. 2d 295; Roe v. Howard County, 75 Neb. 448, 106 N. W. 587, 5 L. R. A. N. S. 831. There is no testimony here that the water involved was so unusual and extraordinary a manifestation of nature as could not under normal conditions have been reasonably anticipated or expected. The court quite properly removed this issue from the jury.

The defendant asserts that the verdict is excessive; while the plaintiff asserts that no remittitur should be required. It is apparent that in requiring the remittitur, the court excluded evidence of temporary damage to real estate which could properly be considered by the jury. See Hunt v. Chicago, B. & Q. R.R. Co., 180 Neb. 375, 143 N. W. 2d 263. While indefinite in some respects, there was sufficient evidence to support the jury verdict.

Where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured. McKinney v. County of Cass, 180 Neb. 685, 144 N. W. 2d 416.

The judgment is modified by removal of the remittitur with directions to enter judgment on the jury's verdict, and as so modified is affirmed.

AFFIRMED AS MODIFIED.