WILSON CONCRETE COMPANY, APPELLANT, v. COUNTY OF SARPY ET AL., APPELLEES.

202 N. W. 2d 597

Filed December 1, 1972. No. 38412.

Hird Stryker of Fraser, Stryker, Marshall & Veach, for appellant.

Dixon G. Adams, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

This is an action by the plaintiff, Wilson Concrete Company, for damages and for an injunction requiring the defendant, Sarpy County, to provide an adequate

passageway under a highway for the water of a natural watercourse. The district court dismissed the action and the plaintiff has appealed from that portion of the judgment denying injunctive relief.

The plaintiff is the owner of a 17-acre tract of land in Sarpy County, Nebraska. The tract is roughly an elongated isosceles triangle. The base and southerly boundary of the triangle is the embankment and right-of-way of old Highway No. 370, now known as Avery Road West. The easterly boundary is the embankment and right-of-way of U. S. Highway No. 73-75. The third side of the triangle is the embankment and right-of-way of the Union Pacific Railroad. The base and south boundary of the triangle is 700 feet long and the other two sides are each approximately 3,000 feet long. Plaintiff purchased a part of the tract in 1949 and the remainder in the early 1950's. Since its purchase, the area has been used for the fabrication of precast pipe and concrete girders.

Mud Creek is a natural watercourse which flows generally north to south through Sarpy County. Mud Creek enters plaintiff's property from the east approximately 1,000 feet south of the north boundary of the tract through two 8 by 10 foot concrete culverts under U. S. Highway No. 73-75. At various other points along both the east and west boundaries of the tract there are other smaller culverts which allow drainage of water into Mud Creek as it crosses plaintiff's property. The aggregate capacity of all culvert inlets to plaintiff's property is 231 square feet. Mud Creek leaves plaintiff's property at a point on the south boundary near the southwest corner of the triangle.

In 1954, the State of Nebraska constructed Highway No. 370 along the entire south boundary of plaintiff's property. An earth embankment 20 to 30 feet in height was erected along the entire distance on what had previously been natural terrain. Prior to this construction, the water of Mud Creek and its flood plain flowed south

unimpeded from the plaintiff's property. In construction, the State placed a single 10 by 10 foot box culvert where there had previously been an open ditch as a waterway for Mud Creek to drain from plaintiff's land. The outlet culvert capacity has been 100 square feet since that time. In 1961, the State transferred title and jurisdiction over Highway No. 370 to the defendant, Sarpy County. The county assumed the responsibility for its maintenance and repair.

Since the time of construction of Highway No. 370, plaintiff's tract has flooded several times to various degrees. The most serious flood occurred in June 1967, when the entire area was covered by water. Plaintiff expended extensive sums in restoring the area after the 1967 flood. Witnesses testified that in floods the water begins to back up next to the culvert area under old Highway No. 370.

The plaintiff's contention is that the culvert under old Highway No. 370 is inadequate and caused and will continue to cause flooding. The defendant's contention is that the culvert was adequate for any reasonably anticipated flow of water. The defendant also contends that the flooding which has resulted was due to plaintiff's negligent actions on its own property. These allegedly consisted of constructing bridges across Mud Creek; placing obstructions, such as buildings and storage, in the flood plain; and allowing vegetation and silt to accumulate in the creek.

The expert witnesses disagreed on many issues. An analysis of their testimony, however, shows they did agree that the culvert was inadequate and that it would have caused considerable backwater when it was originally installed. They also agreed that the increasing urbanization of the area would increase its inadequacy. The testimony of both plaintiff's and defendant's expert witnesses was also that removal of the culvert in question and leaving an open cut would reduce the flooding. The experts tended to disagree as to the extent to which

the culvert contributed to past flooding, and as to how much future flooding would be reduced by its removal. The evidence here is thoroughly persuasive that the construction of the road and culvert obstructed, and continues to obstruct, the passage of the waters flowing in Mud Creek and its flood plain.

In this State, the principle is well established that it is the duty of those who build structures in a natural watercourse to provide for the passage through such obstruction of all waters which may reasonably be anticipated to flow or be carried therein and this is a continuing duty. What private proprietors may not do neither may the public authorities except in the exercise of eminent domain. Fellows v. Buffalo County, 181 Neb. 269, 147 N. W. 2d 801; Crummel v. Nemaha County, 118 Neb. 355, 224 N. W. 864.

Where an obstruction in a natural watercourse constitutes a continuing and permanent injury to adjoining landowners, injunctive relief may be granted upon a proper showing. Olson v. Roscoe, 149 Neb. 189, 30 N. W. 2d 664; Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387.

The defendant contends that injunction should not be granted unless the right is clear, the damage irreparable, and the remedy at law inadequate; and that in any event, a court should not grant injunctive relief where such relief will cause one party great inconvenience or expense while the benefit to the other party is small. It is also argued that the reasons for applying the balance of convenience test are especially strong where the inconvenience or expense is to the public.

The major answer to that contention rests on the constitutional requirement that no property be taken or damaged for public use without just compensation. No issue of eminent domain is directly involved here. A refusal to grant injunctive relief, however, would raise serious constitutional issues. In any event, the balance of convenience rule should not be applied where the

actions were done with full knowledge of the plaintiff's rights and with an understanding of the consequences which might ensue, nor should it be applied where there is a willful invasion of another's rights in real property. For statement of the relative hardship rule and relevant discussion, see, Restatement, Torts, § 941, p. 709, and comments.

In this case, the plaintiff prayed for a decree which would require the defendant to replace the present culvert with a new culvert. Experts from both sides testified that the best solution might be to remove the present culvert and replace it with an open cut. On the evidence here, this court cannot properly shape the specific terms of a mandatory injunction. While it is clear that the plaintiff is entitled to injunctive relief, the specific requirements and practical comparisons as to the method of its accomplishment are uncertain. We therefore direct that upon remand the district court direct the defendant to prepare, within a specified reasonable time, a proposal for the specific terms of the injunction, and submit the same to the court for approval. The plaintiff shall be given opportunity to object or to present proposed alternatives. The court will then fix the terms of the permanent mandatory injunction to be entered against the defendant.

The judgment of the district court is reversed and the cause is remanded to the district court for further proceedings in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.