Louis G. Riha and Shirley A. Riha, appellees, v. FirsTier Bank, National Association, Omaha, Trustee, appellant.

539 N.W.2d 632

Filed November 9, 1995. No. S-94-031.

George A. Penry for appellant.

Dixon G. Adams for appellees.

White, C.J., Caporale, Fahrnbruch, Lanphier, Wright, Connolly, and Gerrard, JJ.

Lanphier, J.

This is an appeal from an order granting an injunction brought by Louis G. Riha and Shirley A. Riha against an adjoining landowner, FirsTier Bank. A natural drainageway carried water over the Rihas' land and onto FirsTier's land and then to the Platte River. The Rihas alleged that their land was

being damaged due to the backup of water because of FirsTier's blockage of the natural drainageway for water. The Rihas sought an injunction ordering FirsTier to remove the obstruction on FirsTier's land or to provide an alternative route for the drainage of water.

After a bench trial, the court found that a mandatory injunction was warranted, and an injunction was imposed. FirsTier appealed to the Court of Appeals, and pursuant to our authority to regulate the caseloads of lower courts, we removed the case to our docket. Finding no merit in any of the assignments of error, we affirm the holding of the trial court.

## BACKGROUND

The Rihas alleged in a petition filed in the district court for Sarpy County that they owned land which slopes and drains water generally to the south and east and over and across FirsTier's land. They further alleged that a culvert, designated "culvert A" at trial, formerly existed under the roadbed of old state Highway 50 (Old #50) as it existed prior to its relocation. This culvert drained surface waters from the Rihas' land to the south and east over land currently owned by FirsTier. The Rihas further alleged that a natural drainageway from their property existed on FirsTier's land. The Rihas alleged that culvert A had been removed and that the FirsTier land, including the natural drainageway, leveled for farming. They further alleged that these actions resulted in water backing up onto their land. The Rihas requested an injunction ordering FirsTier to remedy the situation.

FirsTier answered in a broad–based pleading. FirsTier admitted that both parties owned land in Sarpy County used for farming and denied everything else. FirsTier then recited six "defenses":

 Defendant denies the allegations contained in paragraphs IV, V, VI, VII, VIII, IX, X, and XI of Plaintiffs' Petition.

. . . .

 Plaintiffs' Petition does not state facts sufficient to constitute a cause of action.

. . . .

■ Plaintiffs have "unclean hands." . . .

. . . .

■ In the 1970's, the 1980's and the 1990's on lands lying north and west of State Highway No. 50 the Plaintiffs constructed dikes, roadways and embankments to accumulate and to collect surface waters, diverted the surface waters on such lands from their natural courses, increased the flows and discharges of surface waters, created depressions and drainways that did not previously exist, and attempted to increase the flow and discharge of surface water to other properties. . . .

. . . .

■ In January of 1981 the Plaintiff Louis Riha desired to remove the north culvert in the Northwest quarter of section 2 under the old abandoned highway no. 50, and following the removal of such culvert Mr. Riha used a part of the culvert for his own purposes. . . .

. . . .

■ Defendant has acted prudently concerning its own land, and has acted properly in using and improving its own property.

Following a hearing and a viewing of the property, the district court filed an order on July 14, 1993. In that order, the court outlined its findings:

With some exceptions, the following findings of fact are made based upon both the evidence and the Court's view of the property. The first two findings are made based only upon the evidence adduced by testimony and exhibits; findings of fact that are made based principally upon the Court's view are identified with an asterisk at the end of each finding.

1. Plaintiffs are the owners, occupiers, and/or mortgage holders of a tract of land lying west and north of new State Highway 50 and south of Buffalo Road;

2. Defendant is the owner of land lying to the east and south of Plaintiffs' land;

3. The Platte River lies to the south and east of both tracts of land;

4. Plaintiffs' land is higher than the land of the

Defendant, and prior to any man–made obstacles, drained to the south and east across the land of the Defendant;

5. These respective tracts of land are separated, from the west to the east, by new State Highway 50 (hereafter referred to as "New #50), an abandoned roadbed for the Missouri–Pacific railroad (hereafter referred to as the "Mo–Pac ROW") and the abandoned roadbed of old State Highway 50 (hereafter referred to as "Old #50");

6. All times subsequent to the construction of roadbeds, drainage from Plaintiffs' land was through three points on the roadbeds, identified as 'A' on the north, 'B' in the center, and 'C' on the south;

7. These three drainage ways still exist through New #50 and the Mo–Pac ROW;

8. There is an old farmstead road (Johnny Kay Road) on Defendant's property that runs in a generally easterly direction from drainage point 'B';

9. There is a drainage ditch located on the north side of Johnny Kay Road in approximate alignment with drainage point 'B' in the roadbeds, which carries runoff water to the Platte River;

10. At all times subsequent to the construction of the roadbeds, after runoff water passed through points 'A', 'B', and 'C', it was collected in the Johnny Kay ditch and carried to the Platte River;

11. At the present time, the collection from point 'C' is through a drainway that exists on the west side of Old #50, another (but separate) drainway on the east side of the Mo–Pac ROW, and by some drainage along the east side of New #50;

12. Water from point 'C' flows north in these mentioned drainways, through a culvert in Johnny Kay Road, and then east in the Johnny Kay ditch to the Platte River;

13. Water draining through point 'B' is collected immediately into the Johnny Kay ditch and carried to the Platte River;

14. Prior to the construction of New #50, water passing through point 'A' drained to the south along the east side

of Old #50 to the Johnny Kay ditch and thence east to the Platte River;

15. The Defendant has leveled the roadbed of Old #50 north of Johnny Kay Road, and converted it to farm land;

16. The Defendant has leveled the roadbed to a height that approximately corresponds with the top of a four–foot culvert existing at point 'A' under new #50;*

17. The only drainage from point 'A' to the Johnny Kay ditch, at the present time, is by a small ditch dug by the Plaintiffs along the east side of the Mo–Pac ROW, and a low spot existing between the west side of the Mo–Pac ROW and the east side of New #50;

18. That the actions of the Defendant in converting the roadbed of Old #50 to farming and leveling it to a height of the existing culvert in New #50 has obstructed the natural flow of water from the Plaintiffs' land;

19. That the actions taken by the Defendant were taken at various and sundry times, but completed in 1990;

20. Plaintiffs have timely brought this litigation and in good faith;

21. Plaintiffs farming practices on the drainways leading from the diversion terrace to drainway 'A' and 'B' has contributed to the silting, but is not the sole proximate cause of the resulting damage;

22. The actions of the Defendant in converting Old #50 to farm land and leveling it to the height aforementioned has caused, and will cause in the future, damage to the property owned by the Plaintiffs as well as damage to the property in which Plaintiffs have a remaining security interest by preventing natural drainage; and

23. Plaintiffs have no adequate remedy at law.

In the same order, the court made specific findings of law:

1. Lower–land owners who build structures in natural water courses have a continuing duty to provide for the passage through such construction of all waters which may reasonably be anticipated to flow or to be carried therein;

2. Where an obstruction in a natural water course constitutes a continuing and permanent injury to adjoining landowners, injunctive relief may be granted;

3. The Defendant's actions in removing the culverts and leveling the right–of–way of Old #50 to its present height constitutes an obstruction and structure that prevents the natural flow of surface waters from Plaintiffs' land; and

4. Plaintiffs are entitled to injunctive relief, although the specific requirements as to the method of its accomplishment are uncertain.

In the order's conclusion, the trial court ordered FirsTier to submit a proposed mandatory injunction in favor of the Rihas within 60 days. The Rihas would then have 30 days to respond. The order provided that if an agreement could not be reached, then a further hearing would be set to determine the specific terms and conditions of the injunction. The order included a dismissal of FirsTier's counterclaim for attorney fees and the taxation of costs to FirsTier.

FirsTier filed a pleading with the court stating that FirsTier objected to the order of the court that FirsTier should be required to suggest what would be an appropriate remedy, if any, in the case. FirsTier, in six pages, apparently sought a rehearing of the case. No proposed mandatory injunction was submitted. Following receipt of FirsTier's pleading, the court scheduled a hearing at which the Rihas, but not FirsTier, appeared. At that hearing, the court accepted the Rihas' suggested injunction which stated:

Defendant is hereby ordered to locate and construct a drainageway along the western portion of its lands (whether those lands be the old Highway 50 right of way or the Missouri Pacific right of way) which drainageway shall be adequate to provide for the passage of all waters which may reasonably be anticipated to flow or be carried therein, so that surface waters draining through the present culvert under new Highway 50 at the point designated as point "A" in the evidence are carried to the Johnny Kay Road ditch, and then on to the PlatteRiver [sic].

It is this order that FirsTier appeals.

## ASSIGNMENTS OF ERROR

FirsTier broadly asserts as errors that the district court erred in entering a mandatory injunction against FirsTier and that the district court should have entered judgment for FirsTier on the

claim of the Rihas and should have heard evidence on FirsTier's claim for attorney fees.

## STANDARD OF REVIEW

In all appeals from the district court in suits in equity in which review of some or all of the findings of fact of the district court is asked by the appellant, it shall be the duty of the Court of Appeals or the Supreme Court to retry the issue or issues of fact preserved in the bill of exceptions and, upon trial de novo of such question or questions of fact, reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof. Neb. Rev. Stat. § 25-1925 (Cum. Supp. 1992).

In de novo review, this court is guided by the rule that a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle him or her to relief. *Romshek v. Osantowski*, 237 Neb. 426, 466 N.W.2d 482 (1991).

The court viewed the property in this case. This court has often stated that where the trial court has viewed the premises, this court is required to consider any competent and relevant facts revealed by the view and any findings made by the trial court, provided that the record contains competent evidence to support the findings. *Id.*; *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985); *Burgess v. Omahawks Radio Control Org.*, 219 Neb. 100, 362 N.W.2d 27 (1985); *Darsaklis v. Schildt*, 218 Neb. 605, 358 N.W.2d 186 (1984).

## ANALYSIS

In order for the plaintiffs in such circumstances to prevail under their theory that the leveling of the area obstructed a natural drainway, they must show by a preponderance of the evidence that the water traversed through the leveled area, that the drainageway was formed and existed in a state of nature, and that it carried water from a higher estate to a lower estate. *Romshek, supra*; *Gruber v. County of Dawson*, 232 Neb. 1, 439 N.W.2d 446 (1989); *Belsky v. County of Dodge*, 220 Neb. 76, 369 N.W.2d 46 (1985).

FirsTier claims that there never was a natural drainageway, starting at point A, across its land and on to the Platte River. To accept this contention would require a conclusion that the 48-inch culverts under Old #50 provided drainage only up to FirsTier's land and not across its land to the Platte River. As found in other cases, natural drainageways probably existed across FirsTier's land prior to the building of the highways and the culverts that were placed in those drainageways. See *Wilson Concrete Co. v. County of Sarpy*, 189 Neb. 312, 202 N.W.2d 597 (1972). To be sure, culvert B was put in place to provide access for water to flow from the Rihas' land, under Old #50, across FirsTier's land via the Johnny Kay ditch, and on to the Platte River. The same purpose of access can be inferred from the record for culverts A and C. When FirsTier removed culvert A, which removal is clear from the record, the natural flow of water was interrupted.

The record lacks evidence to sufficiently establish FirsTier's "defenses." The evidence does show some farming practices by the Rihas which contributed to drainage problems, but these practices were by no means the significant cause of drainage problems. The record supports the finding that the actions of FirsTier were a proximate cause to the damage to the Rihas' land.

The court's findings upon viewing the premises are supported by the record. The water had traversed through the leveled area of Old #50, that is, culvert A, and through that point flowed from the Rihas' land to and over FirsTier's land to the Platte River. The record also clearly shows that the flow of water from the Rihas' land over FirsTier's land and then to the Platte River has now been obstructed by FirsTier's actions.

The evidence of injury suffered by the Rihas is also clear from the record. The water will not drain off their land upon which they intend to farm.

The flow of water cannot be interfered with by a lower proprietor to the detriment of the upper proprietor. *Romshek, supra*; *Belsky, supra*; *Fink v. O'Neill Country Club*, 218 Neb. 30, 352 N.W.2d 166 (1984). The proper remedy in water drainage disputes is an injunction. *Romshek, supra*. Injunctions sound in equity. *University Place–Lincoln Assocs. v. Nelsen,*

247 Neb. 761, 530 N.W.2d 241 (1995); *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994); *CAE Vanguard, Inc. v. Newman*, 246 Neb. 334, 518 N.W.2d 652 (1994).

Injunctive relief may be granted to an adjoining landowner upon a proper showing that an obstruction in a drainageway or natural watercourse constitutes a continuing and permanent injury to that landowner. *Romshek, supra*; *Gruber, supra*; *Wilson, supra*.

The record establishes that the mandatory injunction ordered against FirsTier was and is necessary and proper to stop the damage to the Rihas' land.

## CONCLUSION

Our de novo review establishes that there is a proper showing of continuing and permanent injury to an upper proprietor of land due to the lower proprietor's interference with the flow of water. The mandatory injunction was necessary and appropriate. The decision of the district court is hereby affirmed.

AFFIRMED.