SHUCK, Respondent v. CITY OF SIOUX FALLS, Appellant

(113 N.W.2d 849)

(File No. 9951. Opinion filed March 27, 1962)

**John E. Burke,** Asst. City Atty., Sioux Falls, for Defendant and Appellant.

**Henry C. Mundt,** Sioux Falls, for Plaintiff and Respondent.

SMITH, J.   Drainage provided by culverts extending through a street grade of the city of Sioux Falls failed to dispose of surface water derived from snow during a sudden March thaw. The water which accumulated above the grade flooded plaintiff's home, well and cesspools. In this action he sought to recover the resulting damages from the city of Sioux Falls. The trial was to the court without a jury and an $800 judgment was entered for plaintiff. The city has appealed.

Plaintiff is the owner of a half block of property abutting the north side of West 41st Street, a public street

extending east and west in the city of Sioux Falls. Prior to the consolidation of the cities of South Sioux Falls and Sioux Falls, on December 31, 1955, West 41st Street was located in South Sioux Falls. Its grade was then slightly above the grade of plaintiff's property. Some months prior to the consolidation of the two cities, South Sioux Falls and Minnehaha County entered into an agreement pursuant to which West 41st Street was added to the County Highway System, and was by the county graded, widened, and improved in accordance with plans and specifications on file in the county auditor's office. The grade was then raised at least 1½ feet and 18-inch culverts installed at described points. In accordance with the agreement, West 41st Street was thereafter released from the County Highway System and its maintenance assumed by South Sioux Falls. South Sioux Falls contributed $23,000 to the cost of the improvement.

According to the natural course of drainage, surface water from as far back as 29th Street to the north and west of plaintiff's property drained to the south and east across the general area in which plaintiff's property is located. A small draw north of plaintiff's property carried some of this water, but much of it was diffused and unregulated. Originally the area was little improved but in recent years homes have been built and streets improved. About two blocks immediately around plaintiff has remained undisturbed. An avenue two blocks west and another avenue one and one-half blocks east of plaintiff's property have been improved so as to intersect West 41st Street. Intervening avenues have been improved to points two blocks north of plaintiff's property. Following the course of the natural draw above mentioned, an angling street has been laid out and improved extending southeasterly and northwesterly. This street cuts across the avenues to the north of the area in which plaintiff's property is located and empties surface water into the avenues it intersects including the avenue one and one-half blocks east of plaintiff's home which intersects West 41st Street. The im-

provement of these streets includes hard-surfacing and gutters; some are graveled. By this system of drainage the volume of water drained towards West 41st Street has been increased and its collection at that grade accelerated. An engineer of the city testified that in laying out and improving the streets he conformed to the natural course of drainage.

The described watershed was covered by deep snow in the spring of 1960. During the last days of March, as the result of a sudden thaw, water accumulated back of the grade at West 41st Street and inundated plaintiff's property to a depth of about three feet. His basement, cesspools, and well were filled with water and sand. His living room, which was at a lower level than the rest of his home, was flooded to a depth of one and one-half feet. The flooding lasted for three days. Needless to say damage was done to the structures and to personal property located therein. There is testimony indicating that certain of the culverts were operating at the outset but were soon clogged by gravel and ice and that other culverts were not functioning because of soil and ice. Eventually the city ditched along the outside of two of the culverts. It also made an effort to clear the ditch along the north side of West 41st Street. An engineer testified it was almost impossible to open a culvert clogged with ice and gravel.

Court and counsel surveyed the territory during the trial. By that time the city had installed additional and larger culverts.

The testimony indicates that, except for a single instance, no great amount of water had been seen on plaintiff's property for more than 20 years. Following what is described as a flash flood from heavy rain, two or three years before the flooding in question, plaintiff's property was flooded. Water then stood in his basement, and his well was filled. He then made complaint to the city. It chlorinated his well, but took no other action. On Sunday morning, more than 24 hours before water entered his home on the occasion now under consideration, plaintiff

warned the mayor of Sioux Falls of the developing situation. No effective action was taken.

■ The trial court found that although the city was notified of the danger of flooding incident to the improvements it had made since the raising of the West 41st Street grade in 1955, it failed to provide adequate culverts and to clear existing culverts so as to drain the accelerated accumulation of water at that grade which resulted from the described construction of buildings, and the grading, improving, and hard-surfacing of streets in the above described area north and west of plaintiff's property, and hence as a proximate cause of such failure water was backed up and onto plaintiff's property.

Because we cannot say the clear weight of the testimony is against the court's finding, we are required to accept it. Weidmeier v. Edelman, 75 S.D. 29, 58 N.W.2d 306.

■ The surface water we are here considering is not the mere diffused water which would naturally fall on plaintiff's property, or on the West 41st Street grade.

Neither is it only such diffused water as would naturally drain across plaintiff's property. The city has collected a considerable volume of water at this embankment which according to natural drainage would never reach plaintiff's property and has cast it back upon that property. In an analogous case this court wrote

> "A municipal corporation cannot, without rendering itself liable for the resulting damage, exercise its right to grade or otherwise improve streets so as to collect surface water upon private property. Habicht v. City of Wessington Springs, 46 S.D. 176, 191 N.W. 455; Olson v. City of Watertown, 46 S.D. 582, 195 N.W. 446; Reinartz v. Town of Ethan, 50 S.D. 42, 208 N.W. 174. We think that the responsibility under such circumstances is no different than it is when a city by the construction

"of a sewer causes to be precipitated upon private property a large quantity of surface water that would not have flowed there in its natural course."

Nelson v. City of Sioux Falls, 67 S.D. 320, 292 N.W. 868. That pronouncement is controlling in the present case. For such an invasion of private property a city must answer in damages. Cf. 38 Am.Jur., Municipal Corporations, § 645, p. 352.

■ We have not paused to consider arguments predicated on the theory that the city should not be held for the faulty design of a grade and its culverts planned and constructed as part of the County Highway System by Minnehaha County. Since 1955 the maintenance of this grade has been by Sioux Falls. It is not a permanent improvement. The constant duty has rested on Sioux Falls to keep its culverts open and to make such prudential changes in its structure as would prevent the casting of surface waters, collected by the city, on plaintiff's property. 63 C.J.S. Municipal Corporations § 875, p. 256. Cf. 59 A.L.R.2d 281 at 290.

We have carefully considered other questions raised but do not believe they merit discussion.

The judgment of the trial court is affirmed.

All the Judges concur.