1998 SD 73

Howard KNODEL, Myron Knodel
and Elmer Knodel, Plaintiffs
and Apellants,

v.

KASSEL TOWNSHIP, Hutchinson
County, South Dakota, Defendant
and Appellee.

No. 20047.

Supreme Court of South Dakota.

Argued March 25, 1998.

Decided July 8, 1998.

Larry F. Hosmer of Hosmer and Kettering, Yankton, for plaintiffs and appellants.

Craig A. Kennedy of Doyle and Kennedy, Yankton, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] To stop a neighbor's surface water from draining through his property, a landowner plugged a road culvert. Four decades later, when they learned of the nonfunctioning culvert, the Township supervisors declared their intent to unplug it, and the landowner sought an injunction. Can the landowner prevent reopening the culvert on the grounds (1) the Township delayed too long in discovering and repairing it; (2) the landowner acquired a prescriptive easement to be free from the flow of surface water from upper land; or (3) the neighbor abandoned any dominant drainage easement? Because the culvert allows for the flow of water along a natural drainway and townships must fulfill a statutory duty to inspect and repair their culverts, we uphold the circuit court's denial of an injunction.

### Facts

[¶ 2.] In the late 1940s, Kassel Township constructed a road running north and south dividing farmland currently owned by the Knodel family and Ronald Mettler, near Menno, South Dakota. Mettler's property is higher than Knodels' and thus for drainage purposes, Knodels' land is servient to Mettler's. The affected Knodel property is a forty-three acre tract, lying fallow in the Conservation Reserve Enhancement Program. It has not been farmed for the last twelve years. When the Knodels first moved there in 1950, the tract had a five to six acre lake bed. The lowest part of the lake floor had been dug out and tiled so that water flowing into it would move directly through, rather than accumulate.

[¶ 3.] Before the road was built, surface water naturally flowed over the area from east to west, through the tiled lake bed and then into a creek running to the James River. The road blocked the natural flow. To allow surface water to follow its course, from Mettler's land to Knodels' land, the Township installed a culvert in 1952 at the point where the natural drainway existed. No water was diverted to another destination, nor was the volume apparently increased; yet because the culvert concentrated the naturally diffused flow, it caused erosion on the Knodel land. Nothing in the record informs us if any erosion prevailed in this drainway before the road was built.

[¶ 4.] In 1956, Howard Knodel plugged the culvert, purportedly with the permission of one township supervisor.[1] It remained plugged until these proceedings. In wet years, the blocked culvert caused flooding on two acres of Mettler's land and damage to the road. In the spring of 1996, following heavy rains, ditches flooded again causing water to collect on Mettler's land and to wash out part of the road in the area of the culvert. The Township decided to either unplug it or replace it.

[¶ 5.] The Knodels sought declaratory and injunctive relief against the Township. Initially, the circuit court granted a temporary restraining order. After a hearing on November 25, 1996, however, the court denied a permanent injunction, allowing the Township to proceed with its plans. The Knodels now appeal, averring the circuit court erred when it decided they had not established a clear legal right to a permanent injunction preventing the Township from unplugging the culvert.

## Standard of Review

■ [¶ 6.] An injunction is a proper remedy when private property has by public use been taken or damaged without payment. *Bogue v. Clay County,* 75 S.D. 140, 149, 60 N.W.2d 218, 223 (1953); *La Fleur v. Kolda,* 71 S.D. 162, 168, 22 N.W.2d 741, 744 (1946). Granting or denying an injunction rests in the sound discretion of the trial court. *Gross v. Conn. Mut. Life Ins. Co.,* 361 N.W.2d 259, 264 (S.D.1985); *Hofer v. Bridgewater Independent School Dist.,* 76 S.D. 483, 489, 81 N.W.2d 300, 303 (1957). We will not disturb a ruling on injunctive relief unless we find an abuse of discretion. *Maryhouse, Inc. v. Hamilton,* 473 N.W.2d 472, 474 (S.D.1991). An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence. *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392, 414 (1996)(citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990));

*Dacy v. Gors,* 471 N.W.2d 576, 580 (S.D.1991) (citations omitted).

## Analysis and Decision

### A. Rural Surface Water Drainage

[¶ 7.] If not running on a defined watercourse, the water flowing from Mettler's to Knodels' property follows an ancient drainway, existing long before the road and culvert were built. *See Johnson v. Metropolitan Life Ins. Co.,* 71 S.D. 155, 161, 22 N.W.2d 737, 740 (1946). The Hutchinson County Drainage Administrator testified that the natural drainage pattern in the area of the plugged culvert was from the Mettler to the Knodel property—because the culvert was plugged, the water built up on Mettler's tract until it eventually flowed over the road. He saw no evidence of erosion on Knodels' property, but, of course, according to the Knodels, the erosion occurred in the early fifties, before the culvert was plugged. The Knodels moved to the area after the road had been there for a few years. They recall only that when the culvert was installed, the water passing through it cut an ever widening gully on its way to the lake bed.

Our law relating to the drainage of surface waters in rural areas is summarized in *Bruha v. Bocheck,* 76 S.D. 131, 74 N.W.2d 313: "the owner of the dominant land, in the exercise of a reasonable use of his property, has the right by means of ditches and drains on his property to accelerate the flow of surface waters into a natural watercourse, and into which such waters naturally drain, provided he does not permit an accumulation of water on his property and cast the same on the servient land in unusual or unnatural quantities." These principles apply to a county in the construction, improvement, and maintenance of its highways. In the performance of such work a county cannot divert surface waters into unnatural watercourses or gather water together in unnatural quantities and then cast it upon lower lands in greater volume and in a more concentrated flow than natural conditions would ordi-

---

1. In its Memorandum Opinion, constituting by order its findings of fact and conclusions of law, the trial court found that the supervisor who Mr. Knodel claimed to have obtained permission from in 1956, Rhinhold Gimbel, did not become a supervisor until sometime in the sixties.

narily permit. Damages caused thereby constitute a compensable taking or damaging of private property for a public use under Section 13, Article VI, S.D. Constitution. *See Bogue v. Clay County,* 75 S.D. 140, 60 N.W.2d 218 [S.D.1953], and *Shuck v. City of Sioux Falls,* 79 S.D. 505, 113 N.W.2d 849 [S.D.1962].

*Smith v. Charles Mix County,* 85 S.D. 343, 345, 346, 182 N.W.2d 223, 224 (S.D.1970).[2]

### B. Permanent Injunction

▉▉▉ [¶ 8.] A permanent injunction may be granted under SDCL 21–8–14 to prevent the breach of an existing obligation:

(1) Where pecuniary compensation would not afford adequate relief;

(2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;

(3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or

(4) Where the obligation arises from a trust.

A suit for injunction is inherently an equitable action. *Brown County v. Meidinger,* 271 N.W.2d 15, 19 (S.D.1978); *Presto–X–Company v. Beller,* 253 Neb. 55, 568 N.W.2d 235, 238 (1997); *Sharp v. 251st St. Landfill, Inc.,* 925 P.2d 546, 549 (Okl.1996). "A party seeking equity in the court must do equity, including entering the court with clean hands." *Talley v. Talley,* 1997 SD 88, ¶ 29, 566 N.W.2d 846, 852 (citing *Shedd v. Lamb,* 1996 SD 117, ¶ 26, 553 N.W.2d 241, 245). An essential element to equitable relief is the lack of an adequate remedy at law. *Bienert v. Yankton School Dist., 63–3,* 507 N.W.2d 88, 90 (S.D.1993)(injunctive relief only available when party seeking it is without plain, speedy and adequate remedy at law); *Hein v. Marts,* 295 N.W.2d 167, 171 (S.D.1980);

*Anderson v. Kennedy,* 264 N.W.2d 714, 717 (S.D.1978).

[¶ 9.] In *Maryhouse, Inc.,* 473 N.W.2d at 475, we discussed the four basic factors guiding courts in ruling on requests for injunctions.

1) Did the party to be enjoined cause the damage? *Brookings Mall, Inc. v. Cpt. Ahab's Ltd.,* 300 N.W.2d 259, 264 (S.D. 1980); *Foley v. City of Yankton,* 89 S.D. 160, 230 N.W.2d 476, 479 (1975).

2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law? *Gross,* 361 N.W.2d at 265; *Brookings Mall,* 300 N.W.2d at 264; *Hein,* 295 N.W.2d at 171.

3) Is the party to be enjoined acting in bad faith or is the injury-causing behavior an "innocent mistake"? *Foley,* 89 S.D. at 166, 230 N.W.2d at 479.

4) In balancing the equities, is the "hardship to be suffered by the [enjoined party] . . . disproportionate to the . . . benefit to be gained by the injured party"? *Brookings Mall,* 300 N.W.2d at 264; *Foley,* 89 S.D. at 166, 230 N.W.2d at 479.

Each element will be discussed in turn.

### 1. Damage

▉▉▉ [¶ 10.] For rural surface water drainage, South Dakota follows the "civil law" rule, which burdens "lower agricultural property . . . with an easement under which the dominant, or upper property owner may [reasonably] discharge surface water over the servient estate through natural watercourses." *Winterton v. Elverson,* 389 N.W.2d 633, 635 (S.D.1986); *Gross,* 361 N.W.2d at 266; *Johnson,* 71 S.D. at 157–58, 22 N.W.2d at 739; *Thompson v. Andrews,* 39 S.D. 477, 485–486, 165 N.W. 9, 12 (1917). "[T]he rule allows discharge of surface wa-

---

**2.** The following definition of surface water comes from *Gross,* 361 N.W.2d at 266:

"Surface waters comprehend waters from rains, springs, or melting snows which lie or flow on the surface of the earth but which do not form part of a watercourse or lake." *Sullivan v. Hoffman,* 207 Neb. 166, 170, 296 N.W.2d 707, 710 (1980); *Lahman v. Comm'r of Highways,* 282 N.W.2d 573 (Minn.1979); Re-

statement (Second) of Torts § 846 (1979). The term does not comprehend waters impounded in artificial ponds, tanks, or water mains. *Thomson v. Pub. Serv. Comm'n,* 241 Wis. 243, 5 N.W.2d 769 (1942). "The chief characteristic of surface water is its inability to maintain its identity and existence as a water body." III Farnham, *Waters and Water Rights* § 878, at 2557 (1904).

ters 'over' and not 'on' the land of another." *Gross*, 361 N.W.2d at 266. *See also* SDCL 46A–10A–70 (codifying civil law rule).[3] A lower property owner cannot interfere with the natural flow of surface water to the detriment of an upper property owner. *Riha v. FirsTier Bank*, 248 Neb. 785, 539 N.W.2d 632, 637 (1995); *Mileur v. McBride*, 147 Ill. App.3d 755, 101 Ill.Dec. 257, 498 N.E.2d 581, 583 (1986); *Rounds v. Hoelscher*, 428 N.E.2d 1308, 1310 (Ind.Ct.App.1981); *Dayley v. City of Burley*, 96 Idaho 101, 524 P.2d 1073, 1075 (1974)(civil law rule recognizes servitude of natural drainage between adjoining lands so that the lower owner must accept surface water naturally draining onto land). We know of no exception that inverts this easement to favor lower landholders, save that the civil law doctrine is qualified "inasmuch as it is impermissible for a dominant landowner to collect surface waters, and then cast them upon the servient estate in 'unusual or unnatural quantities.'" *Winterton*, 389 N.W.2d at 635 (citations omitted). Actionable injury may occur if increases in volume or rate cause flooding or erosion. *Steiner v. County of Marshall*, 1997 SD 109, ¶ 22, 568 N.W.2d 627, 632 (citing 1 *Waters and Water Rights* § 9.02(c)(2), at 431 (1991)).

■ [¶ 11.] After the culvert was plugged, the Knodels could consistently farm the lake bed area, as well as the rest of the forty-three acre tract. If the Township unplugs the culvert, the Knodels believe approximately twenty-eight acres of their property will be repeatedly flooded, rendering it unusable. They also predict that the water flow onto their land, concentrated by the culvert, will cause erosion, as it did after the culvert was installed and before it was plugged. Yet, the natural flow of surface water goes from the Mettler land to the Knodel property, via the culvert under the Township Road. "[I]t is the duty of highway authorities to place openings in highway grades so as to permit surface water to escape in its natural course from the higher to the lower lands." *Owens v. Fayette County*, 241 Iowa 740, 40 N.W.2d 602, 605 (1950). Compare SDCL ch 46A–10A (county drainage).[4] "[A]n injunction will lie to restrain highway officials from so improving a highway as to divert water from its course of natural drainage and cause it to flow upon [a property owner's] land in an unusual and unnatural manner." *Owens*, 40 N.W.2d at 605. Other than concentrating the flow, however, the reopened culvert will neither divert water from its natural course nor in-

3. SDCL 46A–10A–70 states:

Subject to any official controls pursuant to this chapter and chapter 46A–11, owners of land may drain the land in the general course of natural drainage by constructing open or covered drains and discharging the water into any natural watercourse, into any established watercourse or into any natural depression whereby the water will be carried into a natural watercourse, into an established watercourse or into a drain on a public highway, conditioned on consent of the board having supervision of the highway. If such drainage is wholly upon an owner's land, he is not liable in damages to any person. Nothing in this section affects the rights or liabilities of landowners in respect to running waters or streams.

4. SDCL 46A–10A–20 provides:

Official controls instituted by a board may include specific ordinances, resolutions, orders, regulations or other such legal controls pertaining to other elements incorporated in a drainage plan, project or area or establishing standards and procedures to be employed toward drainage management. Any such ordi-

nances, resolutions, regulations or controls shall embody the basic principle that any rural land which drains onto other rural land has a right to continue such drainage if:
(1) The land receiving the drainage remains rural in character;
(2) The land being drained is used in a reasonable manner;
(3) The drainage creates no unreasonable hardship or injury to the owner of the land receiving the drainage;
(4) The drainage is natural and occurs by means of a natural water course or established water course;
(5) The owner of the land being drained does not substantially alter on a permanent basis the course of flow, the amount of flow or the time of flow from that which would occur; and
(6) No other feasible alternative drainage system is available that will produce less harm without substantially greater cost to the owner of the land being drained.
Such provisions do not necessarily apply within municipalities, but if a municipality drains water onto rural lands lying outside the boundaries of the municipality, the municipality is subject to the above provisions, if adopted by the board.

crease its volume to unreasonably inundate Knodels' property.

[¶ 12.] In plugging the culvert, the Knodels obstructed the natural flow of surface water. To contend that they are entitled to farm a lake bed area by forcing a higher landowner to retain the water is simply insupportable. *Island County v. Mackie*, 36 Wash.App. 385, 675 P.2d 607, 611 (1984)(landowners not entitled to block county's culvert where it and landowners' lowland property lay within natural drain); *Lemer v. Koble*, 86 N.W.2d 44, 46 (N.D.1957)(where there was a natural drainway that carried surface water and the board of township supervisors provided by means of a culvert drainage for excess water which accumulated in ditches along the highway to prevent water from overflowing on the adjoining land, plaintiff landowner was not entitled to damages nor to an injunction enjoining the defendants from discharging surface waters through the culvert). Reopening the culvert will only restore the natural drainage pattern and absent any showing this is somehow unreasonable, the Knodels have no right to expect others to bear their burden.

### 2. Irreparable Harm

[¶ 13.] The Knodels argue that irreparable harm, specifically washouts and flooding, will occur if the culvert is unplugged. Harm is only irreparable " 'where ... it cannot be readily, adequately, and completely compensated with money.' " *Maryhouse, Inc.*, 473 N.W.2d at 475. The trial court reasoned, and we agree, that if the water channeled through the culvert causes "unreasonable" harm to the Knodels' property, they have an adequate remedy at law and may sue for damages. Government entities cannot be liable, however, if they do not undertake to physically alter or materially increase the natural flow of surface water. *Ullery v. Contra Costa County*, 202 Cal. App.3d 562, 248 Cal.Rptr. 727, 733 (1988). The Knodels have not established this element.

### 3. Township Duties

[¶ 14.] Townships have mandatory responsibilities for their culverts:

> It *shall* be the duty of the township board of supervisors to cause to be inspected, at least once every three months, *each culvert* on secondary highways within the township and to *cause same to be repaired if necessary*.

SDCL 31–14–33 (emphasis added).[5] Here, the Township, acting through its board of supervisors, notified the Knodels of their intent to either unplug or replace the culvert. As a road may alter the natural flow of surface water, townships are obliged to reasonably accommodate the area's natural drainage. The Township acted within its statutory duty to monitor and repair its culverts. Injunctions cannot be used to prevent public officials from exercising their legal obligations. *Anderson*, 264 N.W.2d at 718; SDCL 21–8–2. Simply because a plugged culvert remained undiscovered for many years will not alter those responsibilities.

### 4. Balancing Hardship and Benefit

[¶ 15.] The Knodels assert the benefit they will enjoy by being able to farm all their tillable land outweighs the hardship that may be suffered by the Township. Their argument overlooks the rights of the dominant landowner, Mettler, who is not party to this action. Easements, including an upper owner's drainage rights, are property within the purview of the constitutional provision that no persons shall be deprived of their property without due process. *Thompson*, 39 S.D. at 486, 165 N.W. at 12; United States Constitution, Amendment V; South Dakota Constitution, art. VI, § 13. Furthermore, the Township has a statutory duty to repair the culvert and to maintain the road, flooded and damaged because of the plugged culvert. *See* SDCL 31–13–1: "The board of township supervisors shall construct, repair, and maintain all of the second-

5. The Knodels argue that as the Township had not checked the culvert for over forty years, it somehow agreed the culvert should stay plugged. After our review of the record, it is apparent the Township was not aware of the existence of the plugged culvert until Mr. Mettler alerted the board of supervisors that a culvert existed in the area where the road was flooding. We find this argument to be without merit.

**510** ■

ary roads within the township." Failure to perform statutory road maintenance duties may even, in certain circumstances, subject townships to liability. *See Fritz v. Howard Tp.,* 1997 SD 122, 570 N.W.2d 240; *Rodgers v. Shaler Tp.,* 164 Pa.Super. 558, 67 A.2d 806, 807 (1949). In this context, we believe a "balancing of the equities" is unwarranted because the benefit the Knodels seek deprives another landowner of a superior right and subverts a township's statutory duties.

### Conclusion

■ [¶ 16.] A lower property owner cannot validly complain if a "basin is filled by natural drainage from upper land. And we think it is not unsound to reason that the settler on lower land must have anticipated and understood that the watercourse across his land must carry an added burden of water as an incident of the improvement and reasonable use of the upper property." *La Fleur,* 71 S.D. at 167, 22 N.W.2d at 744. The Knodels have not shown a clearly established legal right to stop the Township from unplugging the culvert. Based on the record before us, we see no abuse of discretion in the trial court's denial of a permanent injunction. In reaching our decision, we are not relieving Kassel Township of its continuing statutory duty to maintain and repair its culverts so that they do not physically alter or materially increase the natural flow of surface water.

[¶ 17.] Affirmed.

[¶ 18.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

