2004 SD 69

**FIRST LADY, LLC., Plaintiff and Appellee,**

v.

**JMF PROPERTIES, LLC., Defendant and Appellant.**

**No. 22921.**

Supreme Court of South Dakota.

Considered on Briefs on March 22, 2004.

Decided May 19, 2004.

Gerald M. Baldwin, Custer, South Dakota, Attorney for plaintiff and appellee.

Jon J. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] This case involves adjacent properties and the drainage of both. First Lady Motel brought suit against JMF Properties, LLC (Tramway) claiming nuisance and requesting abatement. The trial court ruled against Tramway. We reverse and remand.

## FACTS

[¶ 2.] The two businesses involved in this case are built on a 300 foot mountain in Keystone, South Dakota. The Motel sits at the base of the mountain. The Tramway occupies the land adjacent and above the Motel. The Tramway was originally built in 1965. It included a service road referred to as the Jeep Trail extending from the foot of the mountain to its summit. The Jeep Trail lies close to the boundary of the two properties. The Mo-

tel was built in 1991 with a pool and retaining wall added in 1997. The slope of the mountain had to be excavated in order to build the Motel leaving a steep embankment directly behind the Motel property. Dirt and debris from the excavation were piled on Tramway property close to the Jeep Trail and are referred to as the berm. The current owner of the Tramway Nick Fullerton d/b/a Tramway Properties, LLC bought the Tramway in 1999. Lester Schriner purchased the Motel in the spring of 2002.

[¶ 3.] In the spring of 2000, Tramway began making improvements to its property, including an Alpine Slide and a new road. The Jeep Trail was heavily used throughout the project and, as a result, lost vegetation and began to erode. To prevent further erosion, Tramway made cross-cuts and rolling dips or hump swales across the trail. Motel claims that the cross cuts and dips redirected the surface water onto its property. Motel also claims portions of the berm were removed allowing drainage onto its property. During 2001 and 2002, Tramway began reclamation of the hill because it lost vegetation during the improvement project. The area was hydro-seeded and hand-seeded, excelsior blankets were laid and silt fences installed. On or about July 22, 2002, heavy rains caused water and silt to run down the hill towards the Motel property and to come over the retaining wall and onto the Motel parking lot.

[¶ 4.] Subsequently, Motel filed a lawsuit against Tramway claiming nuisance under SDCL 21–10–1 and requesting that Tramway be ordered to abate the nuisance.[1] After a trial to the court, the court ruled that Tramway's "actions in diverting water and drainage from [its] property unto and upon Plaintiff's property constitutes a nuisance as defined by SDCL 21–10–1." Further, the court ordered Tramway "to abate said nuisance and to reconstruct the 'berm.'" Tramway appeals. We reverse and remand.

## STANDARD OF REVIEW

[¶ 5.] Trial courts' conclusions of law are reviewed de novo. *Burkhart v. Lillehaug*, 2003 SD 62, ¶ 9, 664 N.W.2d 41, 42. Trial courts' statutory interpretations are likewise a question of law reviewed de novo. *Esling v. Krambeck*, 2003 SD 59, ¶ 6, 663 N.W.2d 671, 675. This Court reviews a trial court's ruling on attorney fees under an abuse of discretion standard. *Gronau v. Wuebker*, 2003 SD 116, ¶ 5, 670 N.W.2d 380, 382.

## ISSUES

I. **Whether the Trial Court Erred in its Conclusion that Tramway's Husbandry of its Land Created a Nuisance.**

II. **Whether the Trial Court Erred in Denying Tramway's Request for Attorney Fees and Costs Pursuant to SDCL 15–17–51.**

## BACKGROUND

[¶ 6.] South Dakota adopted and codified the civil law rule of surface water drainage. In *Thompson v. Andrews*, this Court stated, "[t]he law of this state and the territory from which this state was created has been at all times based on the rule of the civil law . . . that rule recognizes that the lower property is burdened with an easement under which the owner

---

1. Motel originally alleged three causes of action: (1) negligence (2) nuisance under SDCL 21–10–1, and (3) careless and reckless conduct. Tramway filed a counterclaim alleging damages as a result of Motel's retaining wall failing. Motel dropped all but the nuisance claim; Tramway did not pursue its counterclaim.

of the upper property may discharge surface waters over such lower property through such channels as nature has provided." 39 S.D. 477, 165 N.W. 9, 12 (1917). Codification of the civil law in SDCL 46A–10A–70 provides:

> Subject to any official controls pursuant to this chapter and chapter 46A–11, owners of land may drain the land in the general course of natural drainage by constructing open or covered drains and discharging the water into any natural watercourse, into any established watercourse or into any natural depression whereby the water will be carried into a natural watercourse, into an established watercourse or into a drain on a public highway, conditioned on consent of the board having supervision of the highway. If such drainage is wholly upon an owner's land, he is not liable in damages to any person. Nothing in this section affects the rights or liabilities of landowners in respect to running waters or streams.

*Id.* The statute defines an established water course as:

> a fixed and determinate route, either natural or man-made, by which water has flowed from one parcel of real property to another and by which water has been discharged upon a servient estate

for a period of time, on such a regular basis and in such quantities as to make it a predictably continuous activity.

SDCL 46A–10A–1(9).[2] A natural water course is

> a fixed and determinate route by which water naturally flows from one parcel of real property to another due to the conformation of the land and by which water is discharged upon the land receiving the water. It is not necessary that the force of the flow of water be sufficient to form a channel having a well-defined bed or banks.

*Id.* (15). "Natural depression" is not statutorily defined. However, its common usage refers to a place of lower topography.

[¶ 7.] Although many of this state's drainage cases have been decided under the civil law rule; most of those cases involved agricultural property.[3] The application of the civil law rule to urban drainage issues proved too rigid. *Mulder v. Tague,* 85 S.D. 544, 552, 186 N.W.2d 884, 888 (1971) (stating "[a]s any change in grade, level, or topography might affect natural drainage, the civil law rule cannot reasonably be strictly applied in urban areas"). *See also Young v. Huffman,* 77 S.D. 254, 256, 90 N.W.2d 401, 402 (1958) (discussing the use of a more flexible rule

---

2. A " '[s]ervient estate,' [is] any parcel of real property, usually at a lower elevation, which is subject to a legal right allowing a dominant estate to drain water onto it." SDCL 46A–10A–1(20). A " '[d]ominant estate,' [is] any parcel of real property, usually at a higher elevation, which holds a common law or statutory legal right to drain water onto other real property." *Id.* (5).

3. *Hannaher v. St. Paul, M & M.R. Co.,* 37 N.W. 717 (Dak.Terr.1888); *Anderson v. Drake,* 24 S.D. 216, 123 N.W. 673 (1909); *Boll v. Ostroot,* 25 S.D. 513, 127 N.W. 577 (1910); *Thompson v. Andrews,* 39 S.D. 477 165 N.W. 9 (1917); *Mishler v. Peterson,* 40 S.D. 183, 166 N.W. 640 (1918); *Venner v. Olson,* 40

S.D. 585, 168 N.W. 740 (1918); *Lee v. Gulbraa,* 43 S.D. 493, 180 N.W. 946 (1921); *Rae v. Kuhns,* 44 S.D. 494, 184 N.W. 280 (1921); *La Fleur v. Kolda,* 71 S.D. 162, 22 N.W.2d 741 (1946); *Faris v. Moore,* 71 S.D. 482, 26 N.W.2d 130 (1947); *Johnson v. Metropolitan Life Ins. Co.,* 71 S.D. 155, 22 N.W.2d 737 (1946); *Kougl v. Curry,* 73 S.D. 427, 44 N.W.2d 114 (1950); *Bruha v. Bochek,* 76 S.D. 131, 74 N.W.2d 313 (1955); *Gross v. Connecticut Mutual Life Ins. Co.,* 361 N.W.2d 259 (S.D.1985); *Feistner v. Swenson,* 368 N.W.2d 621 (1985); *Lee v. Schultz,* 374 N.W.2d 87 (1985); *Winterton v. Elverson,* 389 N.W.2d 633 (S.D.1986); *Knodel v. Kassel Twnshp.,* 1998 SD 73, 581 N.W.2d 504;

for drainage in urban settings). Strictly applying the civil law rule "would prevent the proper use, development, improvement, and enjoyment of considerable urban property." *Mulder* at 551, 186 N.W.2d at 888.

[¶ 8.] For urban drainage of surface water, this Court has adopted the "reasonable use" rule. *Id.* at 552, 186 N.W.2d at 889. Under the reasonable use rule a landowner "is legally privileged to make a reasonable use of his land, even though the flow of surface water is altered thereby and causes some harm to others." *Id.* The landowner, however, becomes liable " 'when his harmful interference with the flow of surface waters is unreasonable.' " *Id.* Surface waters have been defined by this Court as "waters from rains, springs, or melting snows which lie or flow on the surface of the earth but which do not form part of a watercourse or lake." *Knodel v. Kassel Twnshp.*, 1998 SD 73, 581 N.W.2d 504, n. 2, 581 N.W.2d 504, 507, n2 (citations omitted). "Whether waters are of a nature to be treated as 'surface waters' for the purposes of drainage must, in each case, be a question of fact to be determined from the evidence." *Thompson v. Andrews*, 39 S.D. 477, 165 N.W. 9, 13 (1917).

## DECISION

### I. *Whether the Trial Court Erred in its Conclusion that Tramway's Husbandry of its Land Created a Nuisance.*

[¶ 9.] The trial court concluded that Tramway's "actions in diverting water and drainage from [its] property unto and upon [First Lady's] property constitutes a

nuisance as defined by SDCL 21–10–1." This statute provides:

> A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
>
> (1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;
>
> (2) Offends decency;
>
> (3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street, or highway;
>
> (4) In any way renders other persons insecure in life, or in the use of property.

SDCL 21–10–1.[4] Motel has the burden to prove that Tramway's acts constituted a nuisance. *Frank Stinson Chevrolet, Inc., v. Connelly*, 356 N.W.2d 480, 482 (S.D. 1984) (the party who asserts the affirmative of an issue has the burden of proof). Specifically Motel has to prove that the acts were unlawful or that Tramway had a duty which it omitted to perform. There is no allegation that Tramway's actions were unlawful, thus leaving the allegation of nuisance based upon Tramway's failure to perform a duty. As discussed *supra*, South Dakota has well-established drainage law. The dominant landowner's duty would arise under either the civil law rule (SDCL 46A–10A–70) or under the reasonable use rule. The principal distinction centers on whether the surface water flows by "the general course of natural drainage" (SDCL 46A–10A–70) or whether the surface water flows as a result of an altered drainage course.

---

**4.** It is not clear under what subsection of the statute the court determined Tramway's actions constituted a nuisance.

[¶ 10.] This Court previously stated that drainage allowed under the civil rule is "conditioned only that such natural drainage be accomplished without unreasonable injury to one's neighbor's land." *Gross v. Connecticut Mutual Life Ins. Co., et al,* 361 N.W.2d 259, 267 (S.D.1985). Therefore, if acting under the civil rule, Tramway had a duty not to cause unreasonable injury to Motel property. In this case the trial court concluded "[t]hat Defendant's conduct was not authorized by SDCL 46A–10A–70." It is not clear on what basis the trial court made this determination or what it meant. If the civil rule applies, it would initially require determining whether the drainage was onto a natural or established watercourse. The plaintiff would also be required to show unreasonable harm to its property.

[¶ 11.] If the reasonable use rule applies, Tramway is legally privileged to make reasonable use of its land, even though the flow of surface waters is altered and causes some harm to Motel. Notwithstanding, Tramway has a duty to act reasonably in its harmful interference with the flow of surface waters. Hence, under either the civil rule or under the reasonable use rule, Tramway is legally privileged to drain its property subject to a test of reasonableness. Reasonableness is a question of fact. *Feistner v. Swenson,* 368 N.W.2d 621, 624 (SD 1985).

[¶ 12.] There is no set formula for determining reasonableness. Reasonableness should be determined in light of all the circumstances. *Klutey v. Commonwealth,* Dep't of Hwys., 428 S.W.2d 766, 770 (Ky.1967). Factors that other courts have considered in determining reasonableness include:

   (1) the respective uses of land and drainage water by each party;

   (2) topography;

   (3) volume and direction of drainage;

   (4) consequences of drainage;

   (5) effects of artificial changes in drainage, such as grading, hard surfaces, and artificial drains;

   (6) alternatives; and

   (7) avoidance of unnecessary injury.

Peter N. Davis, Drainage, in 5 WATERS AND WATER RIGHTS § .59.02(b)(4) (1991 ed) (*see Sheehan v. Flynn,* 59 Minn. 436, 61 N.W. 462, 464 (1894) (discussing importance of topography in drainage issues); *Keys v. Romley,* 64 Cal.2d 396, 50 Cal.Rptr. 273, 412 P.2d 529, 537 (1966) (discussing traditional reasonableness inquiry as applied to drainage); *Evers v. Willaby,* 444 N.W.2d 856, 859 (Minn.App.1989) (stating factors to consider in determining reasonable use)). Davis' treatise also states that the reasonable use "rule compares the benefits and hardships caused by a change in the natural drainage pattern." Davis, *supra,* § 59.02(b)(4). Other factors may be relevant depending on the circumstances of the case.

[¶ 13.] In this case, the trial court did not address or make any findings related to natural drainage or the reasonableness of Tramway's actions. Rather, the court appears to hold Tramway responsible without finding the actions or harm to be unreasonable. The court found that Tramway:

1.  attempted to limit the sediment from encroaching upon [Motel] property by the construction of a silt fence and extensive re-seeding and reclamation efforts upon [its] property, but that said efforts were unsuccessful.

2.  that [Tramway] is responsible for the water and drainage from [its] property, and there are viable alternatives of which [it] may avail [itself] to drain the water from its property.

It is also not clear if the trial court applied either the civil law rule or reasonable use rule in finding Tramway liable for nuisance. As previously indicated, South Dakota's surface water drainage under civil law allows property owners to drain into natural or established watercourses and natural depressions. Under the reasonable use rule, property owners are allowed to alter surface water flow with the proviso that it is done reasonably.

[¶ 14.] We, therefore, reverse and remand for the trial court to reconsider the evidence and applicable law. Tramway also assigns error to certain Findings of Fact made by the trial court which we will not address in light of this ruling.

## II. Whether the Trial Court Erred in Denying Tramway's Request for Attorney Fees and Costs Pursuant to SDCL 15–17–51.

[¶ 15.] Tramway claims that pursuant to SDCL 15–17–51, it should be awarded attorney's fees and costs because there was no theory presented under which Motel could recover, as its legal position was wholly without merit. The trial court denied Tramway's request to award fees and costs.

[¶ 16.] Recently we reviewed SDCL 15–17–51 and cases applying it. We wrote that a frivolous action is "one which the proponent can present no rational argument based on the evidence or law in support of the claim. In order to fall to the level of frivolousness there must be such a deficiency in fact or law that no reasonable person could expect a favorable judicial ruling." *Gronau* ¶ 6. Motel claimed that Tramway's actions on Tramway property diverted drainage to Motel property causing harm or potential harm to the retaining wall. While South Dakota law follows the civil law rule of natural flow and applies a flexible reasonable use rule when urban property is involved, the

dominant property owner may still be held liable if diversion is found and if it is unreasonable. Diversion and reasonableness are to be determined by the finder of fact. As such, Motel's claims are not wholly without merit. The trial court did not abuse its discretion in denying fees and costs.

[¶ 17.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.